OPINION
{¶ 1} Plaintiff-appellant, Alan Tallis, appeals the Franklin County Court of Common Pleas' decision to: (1) deny appellant's Civ.R. 56(F) motion to continue summary judgment proceedings; and (2) grant Civ.R. 56(C) summary judgment in favor of defendants-appellees, Woodrun Place Condominiums property manager Clayman Enterprises, Woodrun Place Condominiums Unit Owners' Association, Association Board President Ronald Braucher, Association Board Treasurer J. Blair Reardon, Association Board Secretary Bruce Miller, Association Board Assistant Secretary William Hatfield, and Association Board Vice President John Doe.
 {¶ 2} On February 2, 2005, appellant filed a complaint against appellees and alleged the following. Appellant purchased a unit at Woodrun Place Condominiums ("Woodrun") in February 2001. At the time appellant purchased his unit, appellees permitted motorcycles on the condominium property, but appellees limited the hours of motorcycle usage, and appellees placed noise restrictions on the motorcycles. The motorcycle policy superceded Article IX, Section L, of the Woodrun Declarations, which provided that no person may park or store a motorcycle on common or limited common areas without prior written approval from the condominium association board ("board").
 {¶ 3} In the first half of 2004, Bryan Tallis, appellant's son and the resident of appellant's unit, purchased a motorcycle. "Neither [appellant] nor Bryan Tallis were aware of any Woodrun Rule or Guideline prohibiting either the operation or storage of motorcycles * * * at Woodrun at the time that Bryan purchased the" motorcycle. Bryan stored the motorcycle in the carport assigned to appellant's unit, and Bryan operated the motorcycle on Woodrun property "for the limited purpose of driving it to the public roads."
 {¶ 4} In July 2004, Clayman informed appellant that Bryan's motorcycle violated Woodrun's policies that disallowed motorcycles effective December 31, 2003. However, appellant sought a compromise by proposing that Bryan be permitted to store the motorcycle in the carport or patio at Woodrun, but that Bryan would not operate the motorcycle on Woodrun property. Rather, "Bryan would walk the [motorcycle] to the entrance to the public road (i.e., move the vehicle without engaging the engine on Woodrun property) and then operate the [motorcycle] on the public roads." Appellees rejected the compromise and began to assess fines against appellant for the violation.
 {¶ 5} In filing the complaint, appellant claimed that appellees committed breach of fiduciary duty and breach of duty of good faith by rejecting appellant's compromise and by "passing the rule banning motorcycles without allowing for any exceptions of the storage of a motorcycle" at Woodrun. Appellant also sought, in pertinent part:
Declaratory judgment that any Woodrun Declarations, Rules, and Guidelines prohibiting the storing of motorcycles on Woodrun property and/or moving the vehicle without engaging the engine on Woodrun property is invalid[.]
 {¶ 6} Appellant attached to the complaint a copy of Woodrun's Bylaws. In the bylaws, Article III, Section 12(f) allows the board to "adopt and publish Rules governing the use of the Common Areas and Limited Common Areas and the personal conduct of Unit Owners and occupants, their family members, guests, and invitees[.]" Appellant also attached to the complaint a January 21, 2005 letter from Clayman to appellant that reiterated the fines assessed against appellant and that stated:
* * * [T]he keeping of a motorcycle at Woodrun * * * is not permitted.
As of today, the motorcycle is still residing on the condominium property. * * *
 {¶ 7} On February 24, 2005, appellees filed an answer to appellant's complaint and a motion for summary judgment. With the summary judgment motion, appellees attached an affidavit from Braucher, where Braucher indicated the following. Prior to 2000, Woodrun "did not permit motorcycles[.]" In May 2000, the board passed a limited motorcycle use rule:
Motorcycles can be stored inside of garages or car ports, but not parked in open parking spaces, and the hours of operation are from 7:00 a.m. to 11:00 p.m., 7 days a week. No loud mufflers, no revving of engines and the speed limit is 15 MPH. If complaints are received in writing by the Board, the Board can order the removal of the cycle.
 {¶ 8} According to Braucher, after the board enacted the limited motorcycle use rule, unit owners complained about "the noise of motorcycles, the speeding of motorcycles on condominium property, the operation of the motorcycles outside the permitted hours and parking violations. Further, the board also was not successful in enforcing [the limited motorcycle use] rule or dissuading unit owners or their guests from repeatedly disregarding the" limited motorcycle use rule.
 {¶ 9} Subsequently, on November 11, 2003, the board decided to revoke the limited motorcycle use rule "because the presence of motorcycles * * * continued to be a source of conflict and unit owner dissatisfaction." At the unit owners' November 23, 2003 meeting, the board discussed the revocation of the limited motorcycle use rule "and the ban of all motorcycles at Woodrun." All unit owners present at the meeting agreed to the ban. "Notice of this fall meeting was given to all unit owners. [Appellant] was notified of the time and place of the meeting but did not attend."
 {¶ 10} According to Braucher in his affidavit, appellees published the "newly revised ban on motorcycles" in a January 2004 newsletter that appellees distributed to all unit owners and occupants, including appellant and Bryan. Appellees attached to the summary judgment motion a copy of the newsletter, which stated:
* * * [N]o motorcycles are allowed. This rule allowing motorcycles was put into effect in 1999, but it was abused. The rule has been changed to reflect no motorcycles in Woodrun Place.
 {¶ 11} Next, Braucher stated the following in his affidavit. In March 2004, appellees sent unit owners a summary of the unit owners' November 2003 meeting. Appellees attached a copy of the summary, which denoted, "[w]e changed another rule also, NO MOTORCYCLES anymore. Neither riding [n]or storing a motorcycle on the property. To be effective Dec. 31, 2003."
 {¶ 12} Lastly, Braucher stated that, during the summer of 2004, Braucher noticed Bryan driving a motorcycle on Woodrun property. Appellees informed Bryan and appellant that the motorcycle violated Woodrun rules, but appellant "refused to remove the motorcycle from Woodrun property[.]"
 {¶ 13} Appellees also attached to the summary judgment motion Clayman's July 12, 2004 letter to Bryan, where Clayman stated that:
It has been brought to our attention that you are parking a motorcycle on the Woodrun * * * property.
Motorcycles are not permitted on the Woodrun property. * * *
Please pursue finding another location for your motorcycle. * * * If on July 26, 2004 the motorcycle is still on the property a $25.00 violation fee will be assessed for each day the motorcycle remains on the property.
Similarly, appellees attached a September 30, 2004 letter from Clayman to appellant, where Clayman stated that "the storing and driving of motorcycles at Woodrun" is prohibited.
 {¶ 14} In addition, appellees attached to the summary judgment motion a complaint that eight Woodrun unit owners signed when the limited motorcycle use rule was in effect. In the complaint, the unit owners expressed annoyance with unit owner David McCourt using his motorcycle after 11:00 p.m. in violation of the limited motorcycle use rule. The owners also complained that they were bothered with McCourt and his friends "coming and going" during "the off hours." Likewise, the owners complained that McCourt and his friends' motorcycles were "parked constantly in parking spaces * * * with no concern if it is a resident parking place."
 {¶ 15} Lastly, appellees attached to the summary judgment motion a copy of the board's November 11, 2003 minutes. The minutes indicated that the board approved a member's motion to revoke the limited motorcycle use policy "[i]n accordance to our Declarations ARTICLE IX, PAGE 18, SECTION `L' NO MOTORCYCLE SHALL BE PARKED or STORED ON ANY COMMON PORTION OF THE PROPERTY[.]"
 {¶ 16} On March 1, 2005, appellant filed a Civ.R. 56(F) motion to continue summary judgment proceedings. In seeking the continuance, appellant claimed that he needed to engage in discovery.
 {¶ 17} Meanwhile, appellees responded to appellant's interrogatories, and, on June 6, 2005, the trial court denied appellant's Civ.R. 56(F) summary judgment motion. The trial court reasoned that "even if discovery proceedings were allowed to proceed, they would not be material to the issues to be resolved in this matter."
 {¶ 18} Subsequently, on June 13, 2005, appellant filed another motion to continue summary judgment proceedings. Appellant indicated that he wanted to perform depositions scheduled for June 28, 2005. The trial court construed the request as another Civ.R. 56(F) motion, and the trial court denied the motion. Again, the trial court reasoned that:
* * * [T]he depositions would not aid in the establishment or negation of facts relating to the issues to be resolved in this matter. Thus, there are sufficient facts present to justify [appellant's] opposition to [appellees'] Motion for Summary Judgment. * * *
 {¶ 19} Appellant then filed his motion in opposition to appellees' summary judgment motion. In the opposition motion, appellant argued that appellees unreasonably implemented and enforced the revised motorcycle policy. Appellant attached to the opposition motion Braucher's interrogatory answers, where Braucher noted that appellees imposed a fine against appellant after giving appellant "fair warning and at least 40-50 days to find a storage unit for the cycle." In the interrogatory answers, Braucher also stated that, with the previous limited motorcycle use rule, "[m]any owners complained about noise, parking, other motorcycles * * * and a break-in and an attempt to steal a cycle." Braucher also acknowledged that McCourt had a motorcycle when the limited motorcycle use rule was in effect and that McCourt had since moved from Woodrun after appellees informed him that they were revising the motorcycle policy.
 {¶ 20} Appellant also attached to the opposition motion a July 10, 2004 e-mail from Braucher where Braucher discussed:
* * * [T]he unit is owned by [appellant] of Irving TX and the mailing address is in Dallas TX, which tells me [Bryan's] parents are probably divorced or separated. No one knows much about him here at [Woodrun]. The unit was bought with cash, no loan on the unit. * * *
What we have here is a young kid whose mother bought him a condo (one that she considers cheap) to put the kid in because she thought he was too old to be living with her. * * *
Likewise, appellant attached to the opposition motion a January 18, 2004 e-mail from Braucher where Braucher stated, "[w]e have enacted a change in the motorcycle rule which only [a]ffected .6% of our population * * * so a small audience shouldn't be a gauge of effective rule making or changing of rules where merited."
 {¶ 21} Additionally, appellant attached to the opposition motion an October 24, 2004 letter from Braucher where Braucher discussed the revised motorcycle rule and stated: "It is not a problem with noise, it is the condo recs [sic] and it is the rules, it has been in the rules long before the bike appeared on the scene."
 {¶ 22} Appellant also included his own affidavit with the opposition motion. In the affidavit, appellant reiterated the facts he alleged in his complaint. Appellant also specified that neither he nor Bryan received the January 2004 or March 2004 correspondences that detailed the revised motorcycle policy. However, appellant did not state in the affidavit that he did not receive notice of the November 2003 unit owners meeting that discussed the revised motorcycle policy, and, similarly, appellant did not challenge the content of such notice.
 {¶ 23} Appellant also included with the opposition motion an affidavit from Franklin Bohanan, a Woodrun resident who owns a motorcycle. Bohanan stated in the affidavit that nobody had told him about the motorcycle ban when he moved to Woodrun in March 2005. Bohanan further stated that appellees fined Bohanan when he once parked his motorcycle outside his unit.
 {¶ 24} Lastly, appellant included with the opposition motion an affidavit from Sharon Johnson. Johnson stated the following in her affidavit. Johnson is a property manager who rents Woodrun units to tenants on behalf of unit owners. Woodrun sends Johnson rule change notices, but on an inconsistent basis. Johnson did not recall any notices on a rule change pertaining to motorcycle usage and storage at Woodrun.
 {¶ 25} On August 17, 2005, the trial court granted appellees' summary judgment motion. The trial court concluded that appellees acted reasonably in implementing and enforcing the revised motorcycle policy. In discussing the revised motorcycle policy, the trial court stated that "[t]he rule forbidding the usage or storage of motorcycles was reinstated[.]"
 {¶ 26} On August 23, 2005, appellant filed a proffer "of issues that he was exploring during discovery." In the proffer, appellant stated that he recently learned that board member Miller "does not appear to be a Unit Owner of any Woodrun property." Indeed, according to appellant, the Franklin County Auditor's office contains records indicating that "Miller does not own any property in Franklin County[.]" Thus, appellant stated in the proffer that he planned to explore this issue at the depositions that were scheduled for June 2005. However, appellant conceded in the proffer that "[n]either the Declaration nor the Rules and Guidelines specify what occurs when there is an illegal board member[.]"
 {¶ 27} Appellant also stated in the proffer that "the list of owners that the Board uses to send notices to Unit Owners is very inaccurate[.]" Thus, appellant indicated in the proffer that he wanted to explore such an issue through the June 2005 depositions.
 {¶ 28} Appellant now appeals, raising two assignments of error:
ASSIGNMENT OF ERROR NO. 1 — The trial court erred in granting Appellees' summary judgment motion.
ASSIGNMENT OF ERROR NO. 2 — The trial court erred in denying Plaintiffs' Civ.R. 56(F) Motion for Additional Time to Respond to Appellees' Motion for Summary Judgment.
 {¶ 29} We begin with appellant's second assignment of error. In his second assignment of error, appellant contends that the trial court erred by denying his Civ.R. 56(F) requests for a continuance. We disagree.
 {¶ 30} Under Civ.R. 56(F):
Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had * * *.
 {¶ 31} "The court's discretion in granting continuances pursuant to Civ.R. 56(F) should be exercised liberally in favor of the nonmoving party who has requested a reasonable interval for the production of necessary rebuttal material." Carrier v.Weisheimer Cos., Inc. (Feb. 22, 1996), Franklin App. No. 95APE04-488, citing Whiteleather v. Yosowitz (1983),10 Ohio App.3d 272; Whiteside v. Conroy, Franklin App. No. 05AP-123, 2005-Ohio-5098, at ¶ 37. Ultimately, however, "`[t]he provisions of Civ.R. 56(F) are all discretionary. They are not mandatory.'"Martinez v. Yoho's Fast Food Equip., Franklin App. No. 02AP-79, 2002-Ohio-6756, at ¶ 14, quoting Carlton v. Davisson (1995),104 Ohio App.3d 636, 648; Whiteside at ¶ 37. Accordingly, we cannot reverse a trial court's denial of a party's Civ.R. 56(F) motion absent an abuse of discretion. Martinez at ¶ 14, quotingDavisson at 648; Whiteside at ¶ 37. An abuse of discretion constitutes more than an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Rather, it entails an action that is unreasonable, arbitrary or unconscionable. Id.
 {¶ 32} As noted above, the trial court denied appellant's Civ.R. 56(F) continuance requests upon concluding that "even if discovery proceedings were allowed to proceed, they would not be material to the issues to be resolved in this matter." In challenging the trial court's decision to deny appellant's Civ.R. 56(F) requests, appellant first relies on Tucker v. Webb Corp.
(1983), 4 Ohio St.3d 121. In Tucker, the Ohio Supreme Court held that a trial court erroneously granted summary judgment in a products liability action because the opposing party did not have sufficient time to discover critical facts surrounding transactions between the product manufacturer and designer. Id. at 122-123. Here, while appellees did file the summary judgment motion with their answer only a few weeks after appellant filed his complaint, we find significant that the trial court did not rule on appellant's Civ.R. 56(F) requests until June 2005 — after discovery commenced and after appellant had obtained appellees' responses to appellant's interrogatories. Thus, we find appellant's reliance on Tucker misplaced.
 {¶ 33} Next, we note that case law supports the trial court's reasoning for denying the Civ.R. 56(F) continuance requests on the basis that discovery "would not be material to the issues to be resolved in this matter." For example, in Tool Steel ProductsSales Corp. v. XTEK, Inc. (Jan. 29, 1993), Hamilton App. No. C-910533, the First District Court of Appeals reviewed a trial court's decision to deny a continuance request from a party defending against a summary judgment motion. The party sought the continuance to take depositions. However, the appellate court concluded that the trial court did not abuse its discretion in denying the continuance request. The appellate court reasoned, in pertinent part, that "the record allow[ed] reasonably for the conclusion that the requested depositions would not materially have affected" the summary judgment movant's entitlement to a favorable ruling. See, also, Carrier (holding that a trial court did not abuse its discretion by denying a Civ.R. 56[F] motion because the parties requesting the continuance failed to set forth sufficient reasons why they could not oppose the summary judgment motion without the discovery they sought to obtain); see, also, Ball v. Hilton Hotels (1972),32 Ohio App.2d 293, syllabus (holding that "[w]here discovery proceedings would not, if allowed to proceed, aid in the establishment or negation of facts relating to the issue to be resolved, it is not an abuse of discretion for a court to grant a motion for summary judgment before such proceedings are completed").
 {¶ 34} In accordance with XTEK, Inc., Carrier, and Ball,
the record here supports the trial court's decision to deny appellant's Civ.R. 56(F) continuance requests. In particular, appellant did provide evidence to challenge appellees' summary judgment affidavits. Appellant presented his own affidavit and an affidavit from Bohanan in an attempt to challenge the reasonableness of appellees' motorcycle policy. Appellant also presented correspondence from Braucher to challenge the reasonableness of the motorcycle policy. And appellant presented his own affidavit and affidavits from Bohanan and Johnson to determine whether appellees provided proper notice on the revised motorcycle ban.
 {¶ 35} In so concluding, we note appellant's claim that he was unable to explore whether board member Miller was ineligible to vote on the motorcycle policy because he did not own a unit at Woodrun. However, appellant does not establish whether such a contention would have invalidated the motorcycle policy given appellant's admission that "[n]either the Declaration nor the Rules and Guidelines specify what occurs when there is an illegal board member[.]" Accordingly, we need not disturb the trial court's Civ.R. 56(F) ruling despite appellant's above contention.
 {¶ 36} Moreover, we acknowledge appellant's contention that he wanted to explore through depositions that "the list of owners that the Board uses to send notices to Unit Owners is very inaccurate[.]" However, appellant did not state that appellees did not have appellant's correct contact information, and, nonetheless, appellant has failed to explain why he needed depositions despite already having information that appellees' unit owner list is inaccurate.
 {¶ 37} For these reasons, we conclude that the trial court did not abuse its discretion in denying appellant's Civ.R. 56(F) continuance requests, and we overrule appellant's second assignment of error.
 {¶ 38} In his first assignment of error, appellant contends that the trial court erred by granting appellees' Civ.R. 56(C) motion for summary judgment. We disagree.
 {¶ 39} We apply de novo review to a trial court's decision to grant summary judgment. Sadinsky v. EBCO Mfg. Co. (1999),134 Ohio App.3d 54, 58. Pursuant to Civ.R. 56(C), a trial court may grant summary judgment if: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and, after "viewing such evidence most strongly in favor of the nonmoving party," that conclusion is adverse to the non-moving party. State ex rel. Mayes v. Holman (1996),76 Ohio St.3d 147, 148.
 {¶ 40} When proper evidence supports a motion for summary judgment, a non-moving party may not rest on the mere allegations of the pleadings, but the party's response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing a genuine triable issue. Civ.R. 56(E); Jackson v. AlertFire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52. To establish the existence of a genuine issue of material fact, the non-moving party must affirmatively set forth facts entitling the party to relief. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. If the non-moving party "does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E).
 {¶ 41} Here, appellant asserts that there are genuine issues of material fact regarding whether appellees acted unreasonably in enacting and enforcing the revised motorcycle ban after revoking the limited motorcycle use rule. The board's November 11, 2003 meeting minutes reflect the board's approval of a member's motion to revoke the limited motorcycle use rule "[i]n accordance to [Woodrun's] Declarations ARTICLE IX, PAGE 18, SECTION `L' NO MOTORCYCLE SHALL BE PARKED or STORED ON ANY COMMON PORTION OF THE PROPERTY[.]" Appellant asserts, however, that appellees have subsequently misstated the revised motorcycle rule by claiming that the rule not only precludes individuals from parking motorcycles on Woodrun's property, but that the rule also precludes individuals from riding motorcycles on the property. Appellant also asserts that the trial court misstated the revised motorcycle policy in its decision when it stated that "[t]he rule forbidding the usage or storage of motorcycles was reinstated[.]"
 {¶ 42} However, we need not decide whether appellees or the trial court misstated the amended motorcycle rule, given that appellees focused on Bryan parking the motorcycle on Woodrun property when they enforced the revised motorcycle rule against appellant. In particular, Clayman's July 12, 2004 letter indicated that appellees would impose a fine for Bryan parking his motorcycle on Woodrun property. Similarly, Braucher stated in his interrogatory answers that appellees imposed fines against appellant after giving appellant "fair warning and at least 40-50 days to find a storage unit for the cycle." In addition, Clayman's January 21, 2005 letter verified that appellees were fining appellant for Bryan's motorcycle "still residing on the condominium property." Thus, we review appellees' action as applied against appellant, i.e., appellees implementing and enforcing a revised motorcycle rule by fining appellant for Bryan parking his motorcycle on Woodrun property.
 {¶ 43} In examining appellees' actions, we note our previous holdings that:
Condominium rules and regulations, as well as amendments to the declaration, must be reasonable under the surrounding circumstances. If a rule, regulation or amendment to the declaration is unreasonable, arbitrary or capricious in those circumstances, it is invalid.
Worthinglen Condominium Unit Owners' Assn. (1989),57 Ohio App.3d 73, paragraph one of the syllabus.
 {¶ 44} To evaluate the reasonableness of a condominium association's action, we apply a three-pronged analysis:
"The first question in applying the test of reasonableness is whether the decision or rule was arbitrary or capricious. This requires, among other things, that there be some rational relationship of the decision or rule to the safety and enjoyment of the condominium. * * *
"The second question is whether the decision or rule is discriminatory or even handed. This may sound like a `constitutional' consideration applicable only in case of `state action,' * * * but we believe it protects against the imposition by a majority of a rule or decision reasonable on its face, in a way that is unreasonable and unfair to the minority because its effect is to isolate and discriminate against the minority. It provides a safeguard against a tyranny of the majority.
"The third question is whether the decision or rule was made in good faith for the common welfare of the owners and occupants of the condominium. * * * We believe good faith is an essential ingredient of a reasonable decision or rule." * * *
(Emphasis deleted.) Id. at 76, quoting River TerraceCondominium Assn. v. Lewis (1986), 33 Ohio App.3d 52, 57.
 {¶ 45} Here, appellant claims that appellees acted arbitrarily and capriciously in adopting the above-noted motorcycle ban and in fining appellant for Bryan keeping the motorcycle on condominium property. In making such a challenge, appellant first argues that, contrary to appellees' assertions, motorcycle noise could not have been the reason for the motorcycle rule change given that Braucher stated in the October 24, 2004 letter in reference to Bryan's motorcycle:
* * * It is not a problem with noise, it is the condo recs [sic] and it is the rules, it has been in the rules long before the bike appeared on the scene.
 {¶ 46} However, appellees established that they revoked the limited motorcycle use rule and subsequently enacted and enforced a ban on motorcycles because of an unfavorable experience they had had with motorcycles on Woodrun property. Although the experience stemmed from one prior resident, McCourt, appellees nonetheless endured problems with either McCourt or his guests parking motorcycles "in parking spaces * * * with no concern if it is a resident parking place." Likewise, while Braucher indicated that enforcing the motorcycle policy against appellant and Bryan is not due to "a problem with noise," we emphasize that unit owners did submit to appellees a complaint about motorcycle noise occurring after 11:00 p.m. while the limited motorcycle use rule was in effect. Ostensibly, through the subsequent motorcycle ban, appellees sought to deter motorcycle use on Woodrun property, and appellees sought to avoid the previous unfavorable experience they had had with motorcycle use on the property. Accordingly, we conclude that appellees' enacting and enforcing a rule banning motorcycles bears a reasonable relationship to the above-noted concerns about motorcycles, and, overall, constitutes a "`rational relationship * * * to the * * * enjoyment of the condominium.'" See Worthinglen at 76.
 {¶ 47} In so concluding, we reject appellant's contention that appellees acted arbitrarily and capriciously by imposing and enforcing the motorcycle ban instead of enforcing the previous limited use rule against McCourt and his guests. Braucher stated in his affidavit that the board "was not successful in enforcing" the limited motorcycle use rule or dissuading offenders "from repeatedly disregarding" the rule. Thus, rather than continue with the limited motorcycle use rule after experiencing an abuse of the rule, appellees decided to enact and enforce a ban on motorcycles. Thus, appellees' decision to impose and enforce the motorcycle ban bears a reasonable relationship to concerns stemming from motorcycles on Woodrun property and to concerns stemming from the abuse of the limited motorcycle use rule.
 {¶ 48} Next, we recognize that appellant's proposed compromise to have Bryan not engage the motorcycle engine while on the condominium property did address unit owners' concerns with motorcycle noise. However, we reiterate that, ultimately, appellees' alternative decision to adopt and enforce a ban on motorcycles bears a reasonable relationship to the above concerns about motorcycle noise and parking.
 {¶ 49} In further stating that appellees arbitrarily and capriciously imposed and enforced the above motorcycle ban, appellant claims that neither he nor Bryan received proper notice of the ban. A condominium association must accord a unit owner procedural due process, which requires, in pertinent part, notice of rules and regulations. See Grand Bay of Brecksville Condo. v.Markos (Mar. 25, 1999), Cuyahoga App. No. 73964. As a general matter, notice may be actual or constructive. State Farm Auto.Ins. Co. v. Dept. of Transp. (June 8, 1999), Franklin App. No. 98AP-936. "`Constructive notice is that which the law regards as sufficient to give notice and is regarded as a substitute for actual notice.'"Id. quoting In re Estate of Fahle (1950),90 Ohio App. 195, paragraph two of the syllabus; see, also, Gatesv. Ohio Dept. of Transp. (July 25, 1991), Franklin App. No. 90AP-1386 (McCormac, J., concurring) (recognizing that "`"[c]onstructive notice is information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it"'"). Here, appellant claims that neither he nor Bryan received appellees' January 2004 or March 2004 correspondences that detailed the revised motorcycle ban. However, the board discussed the motorcycle ban with unit owners (who ultimately approved the ban) at the unit owners November 2003 meeting, and the board provided notice of the meeting to the unit owners. Accordingly, through the November 2003 meeting, we impute on appellant constructive notice of the motorcycle ban. In so concluding, we note that, on appeal, appellant claims that appellees provided no agenda regarding the unit owners November 2003 meeting. However, we cannot consider such circumstances because they were not before the trial court and never made part of the record. See App.R. 9; Paulin v. Midland Mutl. Life Ins.Co. (1974), 37 Ohio St.2d 109, 112; City of Upper Arlington v.Cook (Apr. 18, 2000), Franklin App. No. 99AP-251. Rather, appellant did not mention in his affidavit in the summary judgment opposition memorandum that he did not receive notice of the meeting, and, indeed, appellant did not even challenge the content of such notice in the affidavit.
 {¶ 50} Accordingly, for these reasons, we conclude that appellees did not act arbitrarily or capriciously by adopting the above-noted motorcycle ban or by fining appellant for Bryan keeping the motorcycle on Woodrun property in violation of the motorcycle ban.
 {¶ 51} Next, in challenging appellees' motorcycle ban, appellant contends that the ban is discriminatory. Specifically, appellant claims that the ban "discriminatorily focuse[s] only on motorcycle owners" who "choose to use this legal form of transportation." We recognize that the motorcycle ban has a direct impact on motorcycle owners. However, such an impact does not imply "`tyranny of the majority'" or improper discriminatory action in contravention of Worthinglen. See Worthinglen at 76. Rather, we find significant that appellees are applying the ban uniformly, as evinced by Bohanan stating that appellees also fined him for parking a motorcycle on Woodrun property and by appellees applying the rule to McCourt. Similarly, we do not find discriminatory impact from Braucher's previous statement that he does not care about a rule that affected six percent of the unit owners. Again, the rule applies to all unit owners and residents, and appellees are applying the rule uniformly in accordance withWorthinglen. Id. at 76.
 {¶ 52} Lastly, appellant contends that appellees acted in bad faith in creating and enforcing the motorcycle ban. In support, appellant references Braucher's e-mail that denotes appellant possibly being "divorced or separated" and that characterizes Bryan as a "young kid" who is too old to be living with his mother. However, the record does not show that appellees enacted and enforced the motorcycle ban because of any alleged prejudices against appellant or Bryan. As noted above, appellees enacted and enforced the ban because of an unfavorable experience they had with motorcycles on Woodrun property and because of a need to uphold the enjoyment of the property through the motorcycle ban in accordance with Worthinglen.
 {¶ 53} Next, we reject appellant's argument that appellees acted in bad faith by having a uniform rule banning motorcycles and by refusing to examine the individual facts related to appellant's situation. In support of such an argument, appellant relies on Chateau Village North Condo. Assn. v. Jordan
(Colo.App. 1982), 643 P.2d 791, 792, where the Colorado appellate court concluded that a condominium association unreasonably denied a resident's request to have a pet. The association denied the request pursuant to a blanket policy of not allowing pets other than those that they referred to as being "`grandfathered in.'" Id. at 792. However, the condominium bylaws indicated that a resident may not keep pets unless "`expressly permitted in writing[.]'" Id. at 791. In disallowing the condominium association's actions, the appellate court noted that the association was merely applying "its own policy" that it implemented without any authority. Id. at 792-793.
 {¶ 54} Because the condominium association in ChateauVillage was applying "its own policy" that it implemented without any authority, we find the case inapposite. Rather, we conclude that appellant's case is akin to O'Buck v. CottonwoodVillage Condo. Assn. Inc. (Alaska 1988), 750 P.2d 813. InCottonwood Village, the Alaska Supreme Court concluded that a condominium association did not improperly ban all television antennas even though the association's bylaws contained a section that allowed residents to own television antennas with the association's written approval. Id. at 816-817. In so concluding, the court recognized that the condominium association's declarations contained provisions that authorized rules and regulations that governed the use of the common areas. Id. at 817. According to the court, "[t]hese grants of authority are adequate to uphold a blanket rule." Id.
 {¶ 55} Here, like Cottonwood Village, Woodrun's board has authority under Woodrun's bylaws Article III, Section 12(f) to implement rules and regulations that govern the use of the common areas. Thus, like Cottonwood Village, the board had authority to create the uniform ban on motorcycles, and appellees had authority to enforce the ban against appellant without examining the individual circumstances of appellant's situation.
 {¶ 56} For these reasons, we conclude that no genuine issue of material fact existed to indicate that appellees acted unreasonably in revoking the limited motorcycle use rule and thereafter creating and enforcing the ban on motorcycles. Therefore, we conclude that the trial court did not err by granting summary judgment in favor of appellees, and we overrule appellant's first assignment of error.
 {¶ 57} In summary, we overrule appellant's first and second assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Petree and Sadler, JJ., concur.