[Cite as *PHH Mtge. Corp. v. Barker*, 2019-Ohio-5301.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### VAN WERT COUNTY

PHH MORTGAGE CORPORATION,

    PLAINTIFF-APPELLEE,                 CASE NO.  15-19-01

    v.

DENISE L. BARKER, ET AL.,             O P I N I O N

    DEFENDANTS-APPELLANTS.

---

**Appeal from Van Wert County Common Pleas Court**
**Trial Court No. CV-15-07-112**

**Judgment Affirmed**

**Date of Decision:   December 23, 2019**

---

APPEARANCES:

    *George R. Smith, Jr.* **for Appellants**

    *Rick D. DeBlasis and William P. Leaman* **for Appellee**

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellants, Denise L. Barker and Robert D. Barker, Jr. ("Barkers"), appeal the December 31, 2018 judgment entry of the Van Wert County Court of Common Pleas granting summary judgment in favor of PHH Mortgage Corporation ("PHH") as to the Barkers' counterclaims for breach of contract, declaratory judgment relief, and wrongful foreclosure and the January 29, 2019 judgment entry of the Van Wert County Court of Common Pleas granting foreclosure in favor of the PHH. For the reasons that follow, we affirm.

{¶2} This case stems from PHH's third foreclosure complaint in rem filed against the Barkers.[1] (Doc. No. 3). PHH had previously filed foreclosure complaints against the Barkers in 2007 and 2011. (*Id.*).

{¶3} Relevant to this appeal, PHH filed its third foreclosure complaint against the Barkers on July 30, 2015. (Doc. No. 3). On September 25, 2015, the Barker's filed their answer and counterclaims against PHH for breach of contract, declaratory-judgment relief, tortious infliction of emotional distress, and wrongful foreclosure.[2] (Doc. No. 16). PHH filed an answer to the Barkers' counterclaims on November 23, 2015 and an amended answer on December 11, 2015. (Doc. Nos.

---

[1] The Barkers' obligation on the promissory note was discharged in bankruptcy. (Doc. No. 3).
[2] This court recited much of the factual and procedural background of this case in previous appeals, and we will not duplicate those efforts here. *See PHH Mtge. Corp. v. Barker*, 3d Dist. Van Wert No. 15-10-01, 2010-Ohio-5061 (the "2007 case"); *PHH Mtge. Corp. v. Denise L. Barker*, et al., Case No. CV15-07-112 (the "2011 case"). (Doc. No. 16).

20, 22). Mediation was ordered on May 5, 2016 and concluded with the parties unable to reach a settlement. (Doc. Nos. 25, 32). Thereafter, the Barkers requested leave to file an amended answer and counterclaim, and leave was granted. (Doc. Nos. 38, 40, 41). PHH then filed an amended answer to the Barkers' amended counterclaim. (Doc. No. 43).

{¶4} On March 31, 2017, PHH filed a motion for summary judgment. (Doc. No. 54). (*See also* Doc. No. 55). The Barkers also filed a motion for summary judgment together with their memorandum in opposition to PHH's motion for summary judgment on April 26, 2017. (Doc. No. 56).

{¶5} Ultimately, on December 31, 2018, the trial court issued judgment in favor of PHH as to a decree in foreclosure (in rem only) and dismissed the Barkers' counterclaims with prejudice. (Doc. No. 73). The trial court issued its judgment entry and decree in foreclosure on January 29, 2019. (JE, Doc. No. 76).

{¶6} The Barkers filed their notice of appeal on February 20, 2019 and raise seven assignments of error for our review. (Doc. No. 79). We will begin by addressing the Barkers' first, second, third, fourth and fifth assignments of error together, followed by their sixth assignment of error, and then their seventh assignment of error.

### Assignment of Error No. I

**The trial court erred in granting summary judgment to plaintiff [PHH] and in denying defendants' [Barkers'] summary judgment on their claim for breach of duty of good faith and fair dealing and breach of contract by impermissibly weighing the evidence, failing to accord the Barkers the benefit of all reasonable inferences permissibly derived from the pleadings and evidence of record and failing to construe the evidence most strongly in their favor as it was undisputed that plaintiff [PHH] refused to provide a valid reinstatement quote or an address where payments would be *accepted* and thus unlawfully impeded or prevented defendants' [Barkers'] performance of their obligations under contract and violated the court order reinstating the loan.**

### Assignment of Error No. II

**The trial court erred in granting summary judgment to plaintiff [PHH] and in denying defendants' [Barkers'] motion for summary judgment as the notice of default included sums to which plaintiff [PHH] was not legally entitled, failed to comply with a prior order of the court and PHH failed to mail a notice of default prior to filing this action.**

### Assignment of Error No. III

**The trial court erred in granting summary judgment to plaintiff [PHH] as it was undisputed plaintiff [PHH] failed to mitigate damages by refusing to provide an address where payments would be *accepted* or providing a reinstatement quote.**

### Assignment of Error No. IV

**The trial court erred in denying defendants [Barkers] [sic] partial summary judgment on their counterclaim for wrongful foreclosure. Where, as here, a lender files successive foreclosure actions in violation of a court judgment and refuses to provide borrowers an opportunity to perform their obligations under the court judgment and contract in an effort to coerce the borrowers**

**into paying illegal sums under the constant threat of losing their home, its acts in bad faith and the lender may be held to answer for this tortious conduct in damages.**

**Assignment of Error No. V**

**The trial court erred in denying defendants' [Barkers'] summary judgment on their counterclaim for declaratory judgment relief as the bad faith conduct of a lender in performance of its contractual and legal obligations entitles borrowers to a declaration that the note and mortgage are void as a matter of law.**

{¶7} In their first-five assignments of error, the Barkers argue that the trial court erred by granting summary judgment in favor of PHH because PHH breached its mortgage contract with them. In their second and third assignments of error, the Barkers assert that the trial court improperly granted summary judgment in favor of PHH because PHH assessed them for late charges and expenses incurred in prior unsuccessful litigation; that PHH failed to provide the Barkers with an accurate reinstatement quote prior to notice of intent to foreclose; and because PHH failed to mitigate its damages. In their fourth and fifth assignments of error, the Barkers assert that the trial court should have granted summary judgment on their wrongful-foreclosure and declaratory-judgment counterclaims. [3]

*Standard of Review*

---

[3] The Barkers are not challenging the dismissal of the tortious infliction of emotional distress claim against PHH.

{¶8} Generally, we review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

{¶9} However, ""'[t]o properly support a motion for summary judgment in a foreclosure action, a plaintiff must present evidentiary-quality materials showing: (1) the movant is the holder of the note and mortgage, or is a party entitled to enforce the instrument; (2) if the movant is not the original mortgagee, the chain of assignments and transfers; (3) the mortgagor is in default; (4) all conditions precedent have been met; and (5) the amount of principal and interest due.'"" *U.S. Bank N.A. v. Jones*, 3d Dist. Allen No. 1-16-15, 2016-Ohio-7168, ¶ 17, quoting *HSBC Mtge. Servs., Inc. v. Watson*, 3d Dist. Paulding No. 11-14-03, 2015-Ohio-221, ¶ 24, quoting *Wright-Patt Credit Union, Inc. v. Byington*, 6th Dist. Erie No. E-12-002, 2013-Ohio-3963, ¶ 10.

{¶10} "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292. "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

*Analysis*

{¶11} In the Barkers' first, second, and third assignments of error, they argue that the trial court erred when it granted summary judgment in favor of PHH. Specifically, the Barkers argue that summary judgment in favor of PHH was improper because there is no genuine issue of material fact that they were prevented from performing under the terms of the contract (i.e., paying their mortgage payments) through PHH's refusal to provide an accurate reinstatement quote and to provide an address where their mortgage payments were to be sent as a result of PHH's breach. That is, the Barkers contest PHH's standing to initiate the foreclosure action, arguing that PHH is not entitled to summary judgment because PHH failed to demonstrate that they defaulted; that PHH did not meet all conditions

precedent to advance the Barkers' debt; that PHH had not established the accurate principle and interest due; and because PHH failed to mitigate its damages.

*Breach of Contract*

{¶12} In order to address the Barkers' assignments of error, we need to first look to the contract between the parties. To succeed on a breach-of-a-written-contract claim, a plaintiff must demonstrate proof of the contract's existence, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. *See Reddy v. Singh*, 3d Dist. Marion No. 9-14-29, 2015-Ohio-1180, ¶ 75, citing *Caley v. Glenmoor Country Club, Inc.*, 5th Dist. Stark Nos. 2013 CA 00023 and 2013 CA 00018, 2013-Ohio-4877. ¶ 59. Here, the Barkers contend that PHH breached its contract with them because it failed to provide them with an address to which they could tender payment. (*See* Doc. No. 67, D. Barker Aff. at 2-3). In other words, the Barkers argue that PHH breached the duty of good faith and fair dealing.

{¶13} The duty of good faith and fair dealing by each of the parties in performance and enforcement of the contract are implied covenants dictated by public policy. *Littlejohn v. Parris*, 1st Dist. Hamilton No. C-040720, 2005-Ohio-4850, ¶ 27 (concluding "[g]ood faith and fair dealing [] require[] not only honesty but also reasonableness in the enforcement of the contract"). "'Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed

common purpose and consistency with the justified expectations of the other party.'" *Id.* at ¶ 26, quoting 1 Restatement of the Law 2d, Contracts, Section 205, Comment a (1981). Conversely, bad faith may consist of inaction, or may be the "'abuse of a power to specify terms, [or] interference with or failure to cooperate in the other party's performance.'" *Id.* at ¶ 26, quoting 1 Restatement of the Law 2d, Contracts, Section 205, Comment d (1981).

{¶14} "'[T]he doctrine is based on the long-established principle of law that a party should not be able to take advantage of its own wrongful act.'" *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, ¶ 54, citing 13 Lord, Section 39:6, at 582. There exists no independent cause of action for a breach of the implied covenant of good faith or fair dealing separate and apart from the breach-of-contract claim because those implied covenants are integral to any contract, and thus, they "'cannot stand alone.'" *Krukrubo v. Fifth Third Bank*, 10th Dist. Franklin No. 07AP-270, 2007-Ohio-7007, ¶ 18-19, quoting *Interstate Gas Supply, Inc.*, *v. Calex Corp.*, 10th Dist. Franklin No. 04AP-980, 2006-Ohio-638, ¶ 98.

{¶15} Even assuming that there are discrepancies as to the addresses provided to the Barkers by PHH, there is no genuine issue of material fact that the Barkers failed to tender *any* mortgage payment to PHH at *any* address after February of 2008. (*See* Doc. No. 67, D. Barker Aff. at 2); (Doc. No. 54, Spare Aff. Exs. A, B, C, D, E, F, G, H, I, J, K, L). *Compare Lucarell* at ¶ 54, (concluding that "[t]he

prevention of performance doctrine provides that a party who prevents another from performing its contractual obligations cannot rely on that failure of performance to assert breach of contract"), citing *Suter v. Farmers' Fertilizer Co.*, 100 Ohio St. 403 (1919), paragraph four of the syllabus, *Buckley Towers Condominium, Inc. v. QBE Ins. Corp.*, 395 Fed.Appx. 659, 662 (11th Cir.2010), and 13 Lord, Section 39:3, at 569-571. Further, the Barkers failed to present any evidence that PHH prevented them from tendering any mortgage payment to *any* address. Instead, the record reveals that the Barkers had no intent on tendering a reinstatement payment; instead, they sought modification, an accommodation, and mortgage-debt forgiveness. (*See* Doc. No. 67, D. Barker Aff. at 2-3); (Doc. No. 54, Burchfield Aff. Exs. D, E).

{¶16} The record reflects that between August 26, 2009 and January 26, 2011, PHH attempted to engage the Barkers through correspondence indicating they may qualify for the Home Affordable Modification Plan ("HAMP"), which would create a trial-period-payment plan for the Barkers on their mortgage. (*See* Doc. No. 54, Spare Aff. Exs. F, G, H, I). However, this HAMP was denied because the Barkers "did not make all of the Trial Period Plan payments by the end of the trial period as required by the program." Thereafter, the Barkers were denied a second HAMP opportunity because they failed to timely return the necessary documents to PHH. (*See* Doc. No. 54, Spare Aff. Ex. G, I). When subsequent loss-mitigation reviews failed to result in permanent-loan modification, the Barkers then requested

a payment plan beginning on October 1, 2007 "when the Barkers felt that they entered into the accommodation with PHH." (*See* Doc. No. 54, Burchfield Aff. Exs. D, E). Additionally, when their attempts at modification and setting up a payment plan and accommodation were unsuccessful, the Barkers sought mortgage-debt forgiveness on July 15, 2011. Specifically, the Barkers' attorney informed PHH:

> I have been authorized by the Barkers to agree to go forward with their mortgage and reinstate their mortgage as if they had made all their payments that were necessary from October 1, 2007 to today with no back interest assessment and with the principal adjusted as if those payments had been made and then go forward and resume paying the loan under those terms.

(*Id.*). Stated differently, the above correspondence (with PHH) negates any genuine issue of material fact that the Barkers were seeking reinstatement.

{¶17} Moreover, the record reflects that the Barkers did not seek to make a total-reinstatement payment. Thus, there is no genuine issue of material fact that the Barkers were not prevented from performing under the terms of the mortgage contract by PHH's failure to provide an address to remit their payments.

{¶18} Next, we turn to Barkers' claim that they were prevented from performing under the terms of the contract by PHH's failure to provide them an accurate reinstatement quote.

{¶19} Ohio law does not provide a borrower with a right of reinstatement. *See Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, ¶ 18. However, the terms of a mortgage contract may grant a borrower these rights. *Id.*

We therefore must review Paragraphs 19 and 22 of the Barkers' mortgage contract to determine whether they were entitled to reinstatement. Paragraph 22 of the Barkers' mortgage contract provides that the notice of intent to foreclose shall specify the following:

> (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sum secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. *The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in foreclosure proceeding the non-existence of default or any other defense of Borrower to acceleration and foreclosure.* If the default is not cured on or before the date specified in the notice, Lender at its option may require immediately [sic] payment in full or all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.

(Emphasis added.) (Doc. No. 54, Spare Aff. Ex. E). The notice of intent to foreclose provided to the Barkers by PHH on July 7, 2011 states, in relevant part:

> We recognize that your personal obligations to repay the debt secured by the mortgage held by PHH Mortgage Services, on the above referenced property, has been discharged, dismissed or relief granted through your bankruptcy proceeding.
>
> The mortgage would not be subject be subject to foreclosure at this time if $ 16079.27 (total amount due) is remitted within 30 days from the above date. We are required to notify you before foreclosure proceedings commence.

Any remittances must be in the form of "CERTIFIED FUNDS"; no personal checks will be accepted.

(Doc. No. 54, Spare Aff. Ex. J). Paragraph 19 of the mortgage provides that the borrower has the right to reinstatement after acceleration if the borrower meets certain conditions, which are listed as follows:

> **19. Borrower's Right to Reinstate after Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) *pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred;* (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including but not limited to reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, shall continue unchanged. *Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender:* (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

(Emphasis added.) (Doc. No. 54, Spare Aff. Ex. E).

{¶20} Here, the notice's reference to the right to reinstate in Paragraph 22 does not confer an absolute right to reinstatement. Rather, it confers a right to

reinstatement subject to the terms of Paragraph 19. Because PHH complied with the terms of mortgage contract by sending the Barkers a notice of intent to foreclose which complied with the terms of Paragraph 22, and because the Barkers failed to subsequently meet the conditions specified in Paragraph 19, we conclude the Barkers' argument (that they were unaware of the amount required for reinstatement) to be without merit.[4]

{¶21} Moreover, there are no terms in the mortgage contract that support the Barkers' argument regarding the preciseness of the reinstatement quote. Instead, and based upon the facts and circumstance of this case—the Barkers' conduct—in failing to remit the reinstatement amount of $16,079.27 by August 15, 2011 is the issue of material fact in question. Therefore, there is no genuine issue of material fact that the Barkers were not prevented from performing under the terms of the mortgage contract by PHH's failure to provide them with an accurate reinstatement quote.

{¶22} Further, the Barkers argue that their July 15, 2011 letter to the PHH (sent in response to the notice of intent to foreclose) constitutes a qualified written request ("QWR") under the Real Estate Settlement Procedures Act of 1974 ("RESPA"). Therefore, according to the Barkers, they were entitled to a response from PHH within the statutory time frame. *See* 12 U.S.C. 2605 (1996) (current

---

[4] To the extent that the Barkers argue that they were entitled successive notices of intent to foreclose, their argument is specious. The terms of the mortgage contract require no such notices.

version at 12 U.S.C. 2605 (2011)). We disagree. The Barkers waived this argument because such was never raised in their answer, amended answer, or counterclaims against PHH as required under 12 U.S.C. 2605. Furthermore, 12 U.S.C. 2614 creates a three-year statute of limitation for actions brought under 12 U.S.C. 2605. 12 U.S.C. 2614 (1996) (current version at 12 U.S.C. 2614 (2011)). Because the Barkers were precluded from raising their claim under 12 U.S.C. 2605 as a result of the expiration of the statute of limitations (on July 15, 2014) and concurrently failed to demonstrate that the statute of limitation should be equitably tolled, any argument related to the applicability of RESPA fails to create a genuine issue of material fact. *See* 12 U.S.C. 2614. *See Wells Fargo Bank, N.A., v. Sessley*, 10th Dist. Franklin No. 09AP-178, 2010-Ohio-2902, ¶ 24, (concluding that the statute of limitations under 12 U.S.C. 2614 expired and without Sessley's demonstration that the statute of limitations were equitably tolled arguments related to RESPA "were insufficient to create a genuine issue of material fact"). Thus, there is no genuine issue of material fact that the Barkers were not prevented from performing under the terms of the mortgage contract because they were not entitled to a response from PHH under RESPA.

{¶23} Next, the Barkers assert that the accuracy of the notice of intent to foreclose is called into question by PHH's inclusion of late charges and property inspection fees into reinstatement amount. Specifically, they argue that PHH is not

entitled to late charges and property inspection fees as a result of PHH's refusal to communicate with the Barkers or accept payments and because PHH failed to advise the Barkers that it was seeking a lump-sum payment on reinstatement. As we have previously determined, the Barkers failed to establish any genuine issue of material fact that they were entitled to any further form of communication under the terms of the mortgage or RESPA other than the notice of intent to foreclose or that PHH had failed to accept payments after December 7, 2009. (*See* Doc. No. 54, Spare Aff. Ex. N). Thus, any argument suggesting that the Barkers did not know that PHH was seeking a lump-sum payment on reinstatement is without merit. (*See* Doc. No. 54, Spare Aff. Ex. J). Accordingly, we conclude that PHH was entitled to include late fees and property inspection fees in the notice of intent to foreclose under the facts presented in this case.

{¶24} Lastly, the Barkers argue that summary judgment in favor of PHH was improper because PHH had a duty to mitigate their damages. "Under Ohio law, the injured party in a breach-of-contract action has a duty to mitigate damages, meaning that the injured party cannot recover damages 'that it could have prevented by "reasonable affirmative action."'" *First Fin. Bank, N.A. v. Cooper*, 1st Dist. Hamilton No. C-150664, 2016-Ohio-3523, ¶ 23, quoting *Four Seasons Environmental, Inc. v. Westfield Cos.*, 93 Ohio App.3d 157, 159 (1st Dist.1994), quoting *F. Ents. v. Kentucky Fried Chicken Corp.*, 47 Ohio St.2d 154 (1976),

paragraph three of the syllabus. "An injured party need only use 'reasonable, practical care and diligence, not extraordinary measures to avoid excessive damages.'" *Id.*, quoting *Provident Bank v. Barnhart*, 3 Ohio App.3d 316, 320 (1st Dist.1982). The burden of proof for the affirmative defense of failure to mitigate damages lies with the breaching party. *Id.*, citing *Jindal Builders & Restoration Corp. v. Brown & Cris*, 1st Dist. Hamilton Nos. C-970029 and C-970050, 1997 WL 674621, *1 (Oct. 31, 1997). "Whether an injured party used reasonable care to avoid damages presents a question of fact." *Id.*, citing *Pinnacle Mgt. v. Smith*, 12th Dist. Butler No. CA2003-12-327, 2004-Ohio-6928, ¶ 12, citing *Young v. Frank's Nursery Crafts, Inc.*, 58 Ohio St.3d 242, 244 (1991).

{¶25} Even though, PHH could have been more timely in initiating its third foreclosure action (after its dismissal of the 2011 case on July 13, 2014) by filing its foreclosure complaint before July 30, 2015, the mitigation argument ignores the Barkers' inaction throughout the course of the proceedings beginning with the 2007 case. The Barkers argue that PHH failed to take reasonable steps to provide them with an address where payments could be remitted, answer correspondence, and accept payments. However, the Barkers did not establish that PHH failed to use reasonable care to avoid damages, as we previously determined, because PHH provided the Barkers with an address where they could remit a reinstatement payment; because the Barkers never attempted to tender any form of payment to

PHH after February 2008; and because PHH was not legally required to respond to the Barkers' correspondence. *See Cooper* at ¶ 23.

{¶26} Moreover, the Barkers were not prejudiced by *any* failure on the part of PHH to mitigate damages because they were permitted to live *rent-free* in the residence throughout the entirety of the *decade-long* foreclosure actions.

{¶27} Thus, we conclude that there is no genuine issue of material fact that PHH met the conditions precedent in order to advance the debt because there is no genuine issue of material fact that the Barkers failed to perform under the terms of the mortgage contract; that PHH did not breach the mortgage contract; that PHH established accurate principle and interest due; and that PHH did not fail to mitigate its damages.

*Wrongful Foreclosure*

{¶28} Under the fourth assignment of error, the Barkers argue that the trial court should have granted their summary judgment request as to their wrongful foreclosure counterclaim because PHH prevented them from performing under the terms of mortgage contract. In particular, the Barkers request us to recognize an independent cause of action for wrongful foreclosure. "Ohio courts have not yet recognized an independent cause of action for wrongful foreclosure." *Nationstar Mtge., L.L.C. v. Waisanen*, 9th Dist. Lorain No. 16CA010904, 2017-Ohio-131, ¶ 6, fn. 1. *See also Third Fed. S. & L. Assn. of Cleveland v. Formanik*, 8th Dist.

Cuyahoga No. 103649, 2016-Ohio-7478, ¶ 53-54 (concluding that Ohio law does not recognize wrongful-foreclosure actions). Accordingly, the trial court properly denied summary judgment in favor of the Barkers as to their counterclaim for wrongful foreclosure.

*Declaratory Judgment*

{¶29} In their fifth assignment of error, the Barkers assert that the trial court erred in denying summary judgment as to their counterclaim for declaratory-judgment relief because PHH acted in bad faith.

{¶30} A complaint seeking relief based on a breach of contract may be treated as a claim for declaratory judgment seeking construction of the contract. *See Blackwell v. Internatl. Union, United Auto Workers*, 9 Ohio App.3d 179 (8th Dist.1983), paragraph one of the syllabus. *See also* R.C. 2721.04 ("a contract may be construed by a declaratory judgment or decree either before or after a breach of the contract"). An appellate court reviews a trial court's determination "concerning the appropriateness of the case for declaratory judgment" under an abuse-of-discretion standard. *See Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, ¶ 1. After the trial court determines that a complaint for declaratory judgment presents a justiciable question, an appellate court reviews de novo purely legal issues. *Id.* at ¶ 17.

**{¶31}** "A declaratory judgment action provides a means by which parties can eliminate uncertainty regarding their legal rights and obligations." *Mid-Am. Fire and Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, ¶ 8, citing *Travelers Indemn. Co. v. Cochrane*, 155 Ohio St. 305, 312 (1951). *See also* R.C. 2721.03. "The purpose of a declaratory judgment action is to dispose of 'uncertain or disputed obligations quickly and conclusively,' and to achieve that end, the declaratory judgment statutes are to be construed 'liberally.'" *Mid-Am.* at ¶ 8, quoting *Ohio Farmers Inemn. Co. v. Chames*, 170 Ohio St.3d 209, 213 (1959). However, "the declaratory judgment statutes are not without limitation," and a declaratory judgment should be used "only to decide 'an actual controversy, the resolution of which will confer certain rights or status upon the litigants.'" *Id.* at ¶ 9, quoting *Corron v. Corron*, 40 Ohio St.3d 75, 79 (1980).

**{¶32}** Here, the trial court properly denied summary judgment as to the Barkers' declaratory-judgment counterclaim. That is, the trial court did not abuse its discretion in determining that the Barkers were not entitled to declaratory-judgment relief because PHH did not act in bad faith. Indeed, as we previously determined, the record reflects that PHH did not act in bad faith by pursuing foreclosure against the Barkers due to non-payment of their debt.

**{¶33}** For these reasons, the Barkers' first, second, third, fourth, and fifth assignments of error are overruled.

**Assignment of Error No. VI**

**The trial court erred in granting judgment of foreclosure to plaintiff [PHH] as it did not have clean hands and considerations of equity furthermore bar it from the equitable remedy of foreclosure. Where a lender refuses to provide a reinstatement quote or an address where payments would be *accepted* after a court judgment ordering reinstatement of the mortgage loan, it has created the very default giving rise to its claim for relief and equity will not countenance such conduct.**

{¶34} The Barkers argue that the trial court erred in granting a judgment of foreclosure. Specifically, they argue that the trial court erred in granting the judgment of foreclosure because PHH did not have "clean hands."

*Standard of Review*

As this court has previously held,

> a foreclosure involves a two-step process. Once it has been determined as a matter of law that a default on the obligation secured by the mortgage has occurred, the court must then consider the equities to determine if foreclosure is the appropriate remedy.

*PHH Mtge. Corp. v. Barker*, 3d Dist. Van Wert No. 15-10-01, 2010-Ohio-5061, ¶ 35, citing *First Knox Natl. Bank v. Peterson*, 5th Dist. Knox No. 08CA28, 2009-Ohio-5096, ¶ 18, citing *Rosselot v. Heimbrock*, 54 Ohio App.3d 103, 105-106 (12th Dist.1988). "Moreover, because foreclosure is equitable relief, 'the simple assertion of the elements of foreclosure does not require, as a matter of law, the remedy of foreclosure.'" *Id.*, quoting *First Natl. Bank of Am. v. Pendergrass*, 6th Dist. Erie No. E-08-048, 2009-Ohio-3208, ¶ 22. "Therefore, as an equitable action, a

foreclosure action should be reviewed for abuse of discretion." *Id.*, citing *Buckeye Retirement Co., L.L.C. v. Walling*, 7th Dist. Mahoning No. 05 MA 119, 2006-Ohio-7059, ¶ 16. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

**{¶35}** In their sixth assignment of error, the Barkers argue that the trial court abused its discretion by granting a judgment of foreclosure in favor of PHH because PHH violated the doctrine of "clean hands." "The 'clean hands doctrine' of equity requires that whenever a party takes the initiative to set into motion the judicial machinery to obtain some remedy but has violated good faith by [his] prior-related conduct, the court will deny the remedy." *Bank of New York Mellon v. Antes*, 11th Dist. Trumball No. 2014-T-0028, 2014-Ohio-5474, ¶ 32, quoting *Crick v. Starr*, 7ths Dist. Mahoning No. 08 MA 173, 2009-Ohio-6754, ¶ 38, quoting *Bean v. Bean*, 14 Ohio App.3d 358, 363-364 (10th Dist.1983). "'A movant cannot obtain relief on a matter if he is "guilty of reprehensible conduct with respect to the subject matter of the suit."'" *Id.*, quoting *Crick* at ¶ 32, quoting *Marinaro v. Major Indoor Soccer League*, 81 Ohio App.3d 42, 45 (9th Dist.1991). "'However, the movant's conduct "must constitute *reprehensible, grossly inequitable, or unconscionable conduct,* rather than mere negligence, ignorance, or inappropriateness."'" (Emphasis sic.)

*Id.*, quoting *Crick* at ¶ 38, quoting *Wiley v. Wiley*, 3d Dist. Marion No. 9-06-34, 2007-Ohio-6423, ¶ 15.

**{¶36}** Here, the Barkers contend that PHH violated the "clean-hands doctrine" because it did not provide them with a reinstatement quote or an address to which they were to remit payment. However, as we previously determined, the Barkers breached the terms of the mortgage contract and subsequently benefitted from their breach. Consequently, we cannot say that PHH's conduct constitutes "reprehensible, grossly inequitable, or unconscionable conduct" which would permit the Barkers equitable relief because the Barkers' conduct of non-payment was "reprehensible, grossly inequitable, or unconscionable conduct." Accordingly, we conclude that the trial court did not abuse its discretion by granting the equitable relief of foreclosure to PHH.

**{¶37}** Accordingly, the Barkers' sixth assignment of error is overruled.

**Assignment of Error No. VII**

**The judgment of foreclosure is unlawful as it renders the prior judgment ordering reinstatement of the loan a nullity and permits collection of sums to which PHH is not entitled.**

**{¶38}** Finally, and in their seventh assignment of error, the Barkers argue that the trial court abused its discretion by granting PHH foreclosure because the trial court's order of foreclosure permits PHH to collect sums that it is not entitled to collect from the confirmation of sale.

*Standard of Review*

{¶39} Foreclosure actions progress through two, distinct stages which culminate in "final, appealable judgment[s]: the order of foreclosure and the confirmation of sale." *Farmers State Bank v. Sponaugle*, 157 Ohio St.3d 151, 2019-Ohio-2518, ¶ 18, citing *CitiMortgage, Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, ¶ 39. Through the order of foreclosure, the trial court determines "the extent of each lienholder's interest, sets out the priority of the liens, determines the other rights and responsibilities of each party, and orders the property to be sold by sheriff's sale." *Id.*, citing *Roznowski* at ¶ 39 and R.C. 2323.07. The parties may challenge the trial court's decision to grant the decree of foreclosure on appeal. *Id.*, citing *Roznowski* at ¶ 39.

{¶40} "The confirmation of sale is an ancillary proceeding limited to whether the sheriff's sale conformed to law." *Id.* at ¶ 19 citing *Roznowski* at ¶ 40. After the trial court examines the proceedings and finds that the sheriff's sale conformed with R.C. 2329.01 through 2329.61, then the trial court enters a confirmation of sale order which addresses the dispersal of proceeds. *Id.* citing R.C. 2329.31. "An appeal of the confirmation of sale is limited to challenging the confirmation order itself and to issues related to confirmation proceedings—for example, computation

-24-

of the final total amount owed by the mortgagor, accrued interest, and *amounts advanced by the mortgagee for inspections, appraisals, property protection, and maintenance*." (Emphasis added.) *Id.,* citing *Roznowski* at ¶ 40. We review the trial court's decision to confirm a sheriff's sale of property under an abuse-of-discretion standard. *Id.*, citing *Ohio Savs. Bank v. Ambrose*, 56 Ohio St.3d 53, 57 (1990). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

**{¶41}** Because the confirmation-of-sale proceeding has not yet occurred, we are without jurisdiction to review the Barkers' argument. "'In order to be justiciable, a controversy must be ripe for review.'" *State v. Loving*, 10th Dist. Franklin No. 08AP-278 and 08AP-281, 2009-Ohio-15, ¶ 4, quoting *Keller v. Columbus*, 100 Ohio St.3d 192, 2003-Ohio-5599, ¶ 26. "A claim is not ripe for our consideration if it rests on contingent future events that may not occur as anticipated or may never occur at all." *Id.* at ¶ 4, citing *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257 (1998). *See State v. Robinson*, 11th Dist. Lake No. 2009-L-168, 2011-Ohio-4695, ¶ 35. *See also Kalnasy v. Metro Health Med. Ctr.*, 8th Dist. Cuyahoga No. 90211, 2008-Ohio-3035, ¶ 5. Accordingly, we decline to address the Barkers' seventh assignment of error.

**{¶42}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**