OPINION
{¶ 1} Plaintiff-appellant, Jennifer Turner ("Turner"), appeals the decision of the Butler County Common Pleas Court awarding summary judgment to defendant-appellee, Salvagnini America, Inc. ("Salvagnini"), in an employment discrimination and Family and Medical Leave Act ("FMLA") retaliation action. We affirm the trial court's decision.
 {¶ 2} Salvagnini is a distributor for Salvagnini Italia, S.p.A., a European manufacturer of metal working machinery, and maintains a facility in Hamilton, Ohio. As a distributor, *Page 2 
Salvagnini sells and services the metal working machines manufactured by Salvagnini Italia. Turner was employed by Salvagnini from June 20, 2002 to March 24, 2006 as a customer care representative. For approximately two years, Turner worked in the spare parts department at Salvagnini. In or around June of 2004, Turner was transferred to the customer care department. She was the only female employed in either department. Turner's job duties included answering telephone calls and processing spare and replacement parts orders for Salvagnini's customers.
 {¶ 3} Turner contends that Salvagnini treated her and other female employees poorly. She believed that her presence there was resented by male employees, including management. According to Turner, the resentment continued after Salvagnini approved her request for FMLA leave for chronic lower back and pelvic pain in December 2005.
 {¶ 4} On March 24, 2006, Turner met with Doug Johnson, Vice President of Finance and Human Resources at Salvagnini, and was presented with a letter agreement ("Agreement"), stating that Salvagnini had decided to eliminate her position as "Customer Care — Spare Parts." The second paragraph of the Agreement provided that Turner's position was being eliminated because "the increasing complexities of the machinery demand a skilled and experienced technician, more familiar with the actual workings of metal working machinery, in that position." The Agreement stated that Turner's qualifications would no longer fit the new job requirements.
 {¶ 5} The Agreement also included a severance provision, in which Salvagnini agreed to provide Turner with nine weeks of additional pay, as well as health and dental benefits from March 24, 2006 through May 31, 2006. In exchange, the Agreement provided that Turner would release any claims against Salvagnini:
 {¶ 6} "You release forever Salvagnini America and its employees, management group, directors and any other third party affiliates from all claims in connection with your *Page 3 
employment and termination, including contract and tort claims and claims based on the Age Discrimination in Employment Act of 1967,29 U.S.C. § 621. This release applies to all claims that you have or may believe you have against the aforementioned parties."
 {¶ 7} It is undisputed that Turner executed the Agreement on March 31, 2006 and received the stated severance benefits.
 {¶ 8} Approximately one month after her termination, Turner returned to Salvagnini to visit some of her former co-workers. While there, Turner was introduced to Ted Schultz, who informed her that he had been hired as her replacement. Schultz had a 17-year employment history as an electronics technician and held an Associates Degree in applied sciences. It is undisputed that Turner did not have a college degree, and had no formal education or training in mechanical engineering or any other engineering discipline.
 {¶ 9} On July 14, 2006, Turner filed this action, alleging that Salvagnini discriminated against her on the basis of sex in violation of the Ohio Fair Employment Practices Act, R.C. 4112.02(A)[1] and R.C. 4112.99.[2] Turner also alleged that Salvagnini retaliated against her for exercising her rights under the FMLA, in violation of Section 2615(a)(1), Title 29, U.S. Code.[3] On July 20, 2007, Salvagnini moved for summary judgment on Turner's claims, arguing that the Agreement signed by Turner at the time of her termination barred the action, and further argued that she failed to set forth prima facie cases of sex discrimination and FMLA retaliation. The trial court granted Salvagnini's motion for summary judgment. Turner *Page 4 
appealed, and now advances the following sole assignment of error:
 {¶ 10} "THE TRIAL COURT ERRED IN GRANTING A [sic] SUMMARY JUDGMENT IN FAVOR OF DEFENDANT SALVAGNINI AMERICA, INC., AND AGAINST PLAINTIFF JENNIFER TURNER."
 {¶ 11} This court reviews summary judgment decisions de novo, which means that we review the trial court's judgment independently and without deference to its determinations. Burgess v. Tackas (1998),125 Ohio App.3d 294, 296. We utilize the same standard in our review that the trial court should have employed. Lorain Natl. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 129.
 {¶ 12} The Ohio Supreme Court has repeatedly held that summary judgment is appropriate under Civ. R. 56 when "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor."Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 369-370,1998-Ohio-389. The moving party bears the initial burden of informing the court of the basis for the motion, and demonstrating the absence of a genuine issue of material fact. Dresher v. Burt, 75 Ohio St.3d, 280,293, 1996-Ohio-107. If the moving party meets this burden, the nonmoving party has a reciprocal burden to set forth specific facts showing a genuine issue for trial. Id.
 {¶ 13} Turner has presented several issues for our review under her assignment of error. Initially, Turner argues that the phrase "eliminate your position" in the Agreement refers to the elimination of the job position itself, and not the person holding the position. We disagree with Turner's interpretation of the Agreement.
 {¶ 14} In a judicial examination of a contract, the "primary and paramount objective is to ascertain the intent of the parties, and the general rule is that contracts should be *Page 5 
construed so as to give effect to the intention of the parties."Skirvin v. Kidd, 174 Ohio App.3d 273, 2007-Ohio-7179, ¶ 14, citingAultman Hosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51,53. The construction of a contract and issues regarding contract ambiguity are questions of law. Id.; see, also, Alexander v. BuckeyePipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. Common words appearing in a contract will be given their ordinary meaning unless "manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander at paragraph two of the syllabus. If the terms of a contract are clear and unambiguous, a court cannot create a new contract by finding an intent not expressed in the language used by the parties. Id. at 246.
 {¶ 15} The first two paragraphs of the Agreement provide as follows:
 {¶ 16} "The management of Salvagnini has decided to eliminate your position as Customer Care-Spare Parts within the company.
 {¶ 17} "The primary reason is that the increasing complexities of the machinery demand a skilled and experienced technician, more familiar with the actual workings of metal working machinery, in that position. Unfortunately, your qualifications will no longer fit the new job requirements."
 {¶ 18} In construing the plain language of the Agreement, we find that the language used evidences Salvagnini's intent to terminateTurner's employment in the position of customer care-spare parts, not the position itself. The phrase at issue is clear and unambiguous. As the trial court correctly noted, Salvagnini did not use language such as "Salvagnini has decided to eliminate the position of Customer Care-Spare Parts." The language used in the second paragraph further demonstrates this intent: "[u]nfortunately, your qualifications will no longer fit the new job requirements." (Emphasis added.) No other reasonable interpretation could be made in this instance, and the court is required to give *Page 6 
effect to the intent expressed in the clear language of the Agreement.
 {¶ 19} Turner also argues that an alleged verbal misrepresentation regarding the termination of the customer care-spare parts position, made by Johnson at the time the Agreement was presented to Turner, was incorporated into the written Agreement. Turner contends that this misrepresentation renders the Agreement void ab initio as being procured on the basis of fraud in the factum. As a result, Turner argues that she should not be estopped from pursuing her claims against Salvagnini for sex discrimination and FMLA retaliation. We find Turner's argument misplaced, as fraud in the factum is inapplicable to the facts of this case.
 {¶ 20} The Ohio Supreme Court has determined that an executed release is "ordinarily an absolute bar to a later action on any claim encompassed within the release." Haller v. Borror Corp. (1990),50 Ohio St.3d 10, 13. If the validity of a release is attacked on the basis of fraud, whether it is deemed void or voidable is dependent upon the nature of the fraud alleged. Id. "A release obtained by fraud in the factum is void ab initio, while a release obtained by fraud in the inducement is merely voidable upon proof of fraud." Id. (emphasis sic), citing Picklesimer v. Baltimore Ohio RR. Co. (1949), 151 Ohio St. 1,5. The issue of whether the fraud alleged is procured through fraud in the factum or in the inducement is an issue of law for the court. Id. at 14, 15.
 {¶ 21} To constitute fraud in the factum, "an intentional act or misrepresentation of one party precludes a meeting of the minds concerning the nature or character of the purported agreement." Id. at 13. It occurs only where "device, trick, or want of capacity produces `no knowledge on the part of the releaser of the nature of the instrument, or no intention on his part to sign a release or such a release as the one executed' * * *." Id. In such an instance, the instrument is considered void ab initio. Id.
 {¶ 22} In contrast, fraud in the inducement occurs when one party, who admits that *Page 7 
they released their claim for damages and received consideration for their release, asserts that they were induced to do so by another party's fraud or misrepresentation. Id. at 14. The fraud relates "not to the nature or purport of the release, but to the facts inducing its execution * * *," and is voidable only upon proof of fraud. Id. In order to maintain an action for fraud in the inducement, a party must return the consideration they received for the release. Id.
 {¶ 23} In Haller, the Ohio Supreme Court explained the distinction between fraud in the factum and fraud in the inducement as follows: "[s]o long as the releasor understands the nature and character of his act of release and that the releasee will no longer be liable on the claims concerned, or has an opportunity to do so, the fraud is in the inducement only and does not constitute a basis to find the agreement void. In that event it is voidable only, and in order to subject it to attack the releasor must first tender back the consideration paid. No tender is required for fraud in the factum, if alleged." Id. at 14.
 {¶ 24} Our review of the record reveals that only an allegation of fraud in the inducement is applicable in this case. Turner has not claimed that any "tricks or devices" were employed by Salvagnini, and there is no evidence in the record to suggest that at the time she signed the Agreement, she was unaware of its nature or character. The Agreement was provided to her on March 24, 2006, and it was not signed until March 31, 2006. Turner admits in her affidavit that she signed the Agreement several days after she received it. "A person of ordinary mind cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking at what he signed. * * * If a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs." Id. at 14, citing Dice v. Akron, Canton Youngstown RR. Co. (1951), 155 Ohio St. 185, 191, reversed on other grounds (1952), 342 U.S. 359, 72 S.Ct. 312. Pursuant to numbered paragraph five of *Page 8 
the Agreement, Turner also acknowledged that in signing the Agreement, she had "carefully read and [understood] the terms and conditions contained therein and sign[ed] [the] document voluntarily, knowingly, and of [her] own free will."
 {¶ 25} Notwithstanding our determination that only an allegation of fraud in the inducement is applicable to the facts of this case, our review of the record reveals that Turner failed to properly assert this claim. In fact, Turner failed to allege any claims of fraud in her complaint.[4] Her complaint only alleges that on March 24, 2006, Johnson informed Turner that the Customer Care-Spare Parts position was being eliminated, and that her employment was being terminated.
 {¶ 26} The Ohio Rules of Civil Procedure require the circumstances constituting fraud to be pled with particularity. See Civ. R. 9(B). These circumstances normally include the time, place, and content of the false representation, the fact misrepresented, and what was obtained or given as a consequence of the fraud. Stout v. North Am. Rail Group, Butler App. No. 2006-10-286, 2007-Ohio-4971, ¶ 9. "Generally, a pleading must be sufficiently particular to apprise the opposing party of the act which is the subject of the fraud claim, and to enable the opposing party to prepare an effective defense." Id.
 {¶ 27} As the Ohio Supreme Court noted in Haller, since a release is ordinarily a complete bar to a later action on any matter encompassed within it, a party seeking to avoid a release on the basis of fraud in the inducement must allege that the release was obtained by fraud and that the consideration received for the release has been returned.50 Ohio St.3d at 13. (Emphasis added.) Turner failed to set forth these allegations in her complaint. *Page 9 
Her failure to properly allege fraud in the inducement waives this defense. See Stout at ¶ 10.
 {¶ 28} Based upon the foregoing, we conclude that the Agreement executed by Turner bars her claims against Salvagnini for sex discrimination and FMLA retaliation. The release provision of the Agreement provided that Turner agreed to "* * * release Salvagnini * * * from all claims in connection with your employment and termination. * * * This release applies to all claims that you have or may believe you have * * *."
 {¶ 29} It is well-established that a party can waive claims of discrimination under R.C. 4112.02 in a release. See Cole v. TempleIsrael, Summit App. No. 23243, 2007-Ohio-245. The Sixth Circuit has also concluded that FMLA retaliation claims may be waived in this manner. SeeHalvorson v. Boy Scouts of Am. (C.A.6, 2000), 215 F.3d 1326. Turner has not argued that these claims are somehow excluded from the release provision of the Agreement. Therefore, we find that the trial court did not err in holding that the Agreement was a valid and binding contract between Turner and Salvagnini which bars Turner's claims in this case. In light of our finding, it is not necessary to consider the additional issues presented under Turner's assignment of error regarding her sex discrimination and FMLA retaliation claims.
 {¶ 30} After construing the evidence most strongly in favor of Turner, we conclude that no genuine issue of fact exists regarding the enforceability of the Agreement between the parties. Accordingly, we find that the trial court did not err in granting summary judgment to Salvagnini on Turner's claims for sex discrimination and FMLA retaliation. Turner's assignment of error is overruled.
 {¶ 31} Judgment affirmed.
WALSH, P.J., and POWELL, J., concur.
[1] {¶ a} R.C. 4112.02 provides, in part, that it shall be an unlawful discriminatory practice:
{¶ b} "(A) For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
[2] R.C. 4112.99 states that whoever violates Chapter 4112 is subject to a civil action for damages, injunctive relief, or any other appropriate relief.
[3] Section 2615(a)(1) provides: "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."
[4] Based on the evidence in the record, it appears that Turner's fraud argument was first raised in her objections to Salvagnini's discovery requests. However, there is nothing in the record to suggest that Turner sought leave of court to file an amended complaint pursuant to Civ. R. 15(A) in order to properly allege fraud in the inducement. The fact that Turner raised an issue of fraud in her memorandum in opposition to Salvagnini's motion for summary judgment does not create or initiate the defense. See Dane v. Kirsh, (Mar. 20, 1985), Montgomery App. No. CA 9069 (a memorandum is not a pleading, nor does it create or initiate an action or issue). *Page 1