[Cite as *Adena at Miami Bluffs Condominium Owners' Assn., Inc. v. R. Hugh Woodward*, 2021-Ohio-3872.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| ADENA AT MIAMI BLUFFS CONDOMINIUM OWNERS' ASSOCIATION, INC., et al., | : | CASE NO. CA2020-08-044 |
| Appellees, | : | O P I N I O N<br>11/1/2021 |
|  | : |  |
| - vs - | : |  |
|  | : |  |
| R. HUGH WOODWARD, | : |  |
| Appellant. |  |  |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 19CV092538

Reminger Co., LPA, and Joseph W. Borchelt, for appellee, Adena at Miami Bluffs Condominium Owners' Association, Inc., and third-party defendant-appellees Ceil Schlosser, Joey Fay, Stonegate Property Management Company

Lewis, Brisbois, Bisgaard, & Smith, LLP, and Judd R. Uhl and Brian J. Pokrywka, for appellees Cuni, Ferguson & LeVay Co., L.P.A., Amy S. Ferguson, and Cassandra L. Edwards.

R. Hugh Woodward, pro se.

**BYRNE, J.**

{¶1} Defendant-Appellant, R. Hugh Woodward, appeals from the decision of the Warren County Court of Common Pleas, which granted judgment on the pleadings to Plaintiff-Appellee, Adena at Miami Bluffs Condominium Owners' Association, Inc. ("the Association"), and various third-party defendants. For the reasons detailed below, we find

that Woodward sufficiently pleaded two breach of contract claims against the Association, and therefore we reverse the court's decision with respect to those claims. Otherwise, we affirm the trial court's decision.

## I. Summary of the Pleadings

{¶2} The Association is the condominium owners' association for a condominium community in Warren County named Adena at Miami Bluffs. Woodward owns a condominium ("the Property") in the Adena at Miami Bluffs community.

{¶3} In August 2019, the Association sued Woodward in the Warren County Court of Common Pleas. The Association alleged that Woodward was a member of the condominium owners' association by virtue of his ownership of the Property. The Association alleged that its Declaration of Condominium Ownership ("Declaration") was binding upon Woodward and that under the Declaration, Woodward owed the Association for condominium assessments and late fees, and for the Association's costs of recording a lien against the Property in 2017. The Association asked that the court award it a judgment against Woodward for the unpaid assessments and late fees, for reimbursement for related costs expenses, and for attorney fees. The Association further asked that the court find that its lien against the Property, filed "[u]nder the authority of the Declaration," was valid, and order the Property sold to pay the lien, related costs, and attorney fees.

{¶4} Woodward, acting pro se, filed a document captioned "Answer, Affirmative Defenses, Counterclaim and Third Party Plaintiffs/Defendants" ("Answer/Counterclaim"). This document included Woodward's answer to the Association's complaint, a section listing six individuals and entities whom Woodward added to the case as third-party defendants, and a section labeled "Counterclaim" in which Woodward simultaneously brought counterclaims against the Association and third-party claims against the new third-party defendants. The new third-party defendants were (1) Stonegate Property Management

Company ("Stonegate"), which performs property management services for the Association, (2) Joey Fay, who was an employee of Stonegate, (3) Ceil Schlosser, who was the president of the Association's board of trustees, (4) the law firm Cuni, Ferguson, and Levy Co. ("Cuni Firm"), which was the Association's law firm, (5) Amy Ferguson, an attorney at the Cuni Firm, who allegedly filed the Association's foreclosure complaint against Woodward and who represented the Association in the recording of the lien against the Property in 2017, (6) Cassaundra Edwards, who was formerly an attorney at the Cuni Firm, and who allegedly represented the Association in 2017 when it negotiated a payment agreement with Woodward, and finally, (7) "[a]ny and all Boards members" who voted or took any action that approved "spurious, unexplained, unjustified" charges against him.

{¶5} The counterclaim section of Woodward's Answer/Counterclaim was divided into a "First Counterclaim" and a "Second Counterclaim," with the "Second Counterclaim" being divided into twelve sub-parts.

{¶6} In his "First Counterclaim," Woodward alleged that Schlosser, the Association's board president, caused a $310 "lien fee" to be placed against Woodward's "account" with the Association.[1] Woodward additionally alleged that Schlosser "acted in concert" with attorney Ferguson and the Cuni Firm to record the lien against the Property. He further alleged that Schlosser acted in concert with Fay and Stonegate to have the lien recorded as a "charge to [Woodward's] account." Woodward argued that the foregoing parties' actions were in violation of his "rights under established rules, regulations, and standard operating procedures." Additionally, Woodward argued that the parties' actions were in violation of his right to be dealt with "fairly and in good faith" and violated his substantive due process rights. He claimed damages in the amount of $310.

---

1. For purposes of this opinion we assume, without deciding, that all of the allegations in Woodward's Answer/Counterclaim are true. Civ.R. 12(C).

{¶7}   In the first sub-part of his "Second Counterclaim," Woodward alleged that in late 2017, he negotiated a "payment agreement" with the Association, through attorney Edwards.  He anticipated that the "fee" for the payment agreement would be approximately $100.  However, he was informed that the fee would be $408.  Woodward demanded to know why the fee was more expensive than he anticipated.  The Association informed him that no explanation would be provided and that it would foreclose on the Property if he did not enter into the payment agreement.   He therefore chose to enter into the payment agreement.  Woodward alleged that he made payments under the payment agreement for "many months" until he noticed that his account had a balance due of $308.  For reasons that are not fully developed in his pleading, Woodward sent the Association a check for $79. He then sent "the Board and the Property Manager" an email explaining his reasoning for sending a check in that amount.  Following this, he received an account statement with a new charge for $650, with no explanation.  Afterwards, he alleged he received another charge for $1,035.  In March 2019, Woodward claimed that he attempted to resume paying monthly Association dues (because he did not want to get behind on "legitimate dues") but also had no intention of paying the Association while it violated his rights and owed him for "unexplained" fees.  However, the Association refused to accept payment for his monthly dues unless he paid the overdue balance on his account.  With respect to this second counterclaim, Woodward claimed a "money loss" to be determined at trial.

{¶8}   In the second sub-part under his "Second Counterclaim," Woodward stated that "[a]s a result of the conduct of the parties identified above" he had "suffered a monetary loss, as yet uncalculated, from the ongoing spurious, unexplained, unjustified charges."

{¶9}   In the remaining sub-parts of the "Second Counterclaim," Woodward purported to bring claims for civil conspiracy, "wrongful foreclosure," slander of title, violation of the Fair Debt Collection Practices Act ("FDCPA"), "tortious interference and breach of

- 4 -

with the contract" [sic], fraud, "abuse of power," deprivation of property without "due process," violation of the "Consumer Protection Act," ("OCSPA") and breach of the duties of good faith and fair dealing.

{¶10} Woodward never identified by name the precise claims he purported to bring under the "First Counterclaim" and the first sub-part of the "Second Counterclaim." And it was unclear whether Woodward's reference to "monetary loss" in the second sub-part of his "Second Counterclaim" was a purported claim of its own or merely a reference to damages under the first sub-part of the "Second Counterclaim." In other words, Woodward's Answer/Counterclaim described his counterclaims in a manner that was less than clear. As a result, the parties' motion practice filings, the trial court's Decision and Entry, and the parties' appellate briefs do not entirely align when referencing the exact claims brought by Woodward.

## II. Motions for Judgment on the Pleadings and the Decision

{¶11} The Association, Schlosser, Stonegate, and Fay, in response to the counterclaims raised in Woodward's Answer/Counterclaim, jointly filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C). The Cuni Firm, Ferguson, and Edwards ("the Lawyer Defendants") soon filed their own motion for judgment on the pleadings pursuant to Civ.R. 12(C).

{¶12} In June 2020, the trial court issued a decision granting both motions in full. The trial court determined that Woodward had brought the following purported claims: (1) wrongful foreclosure, (2) abuse of power, (3) breach of the duties of good faith and fair dealing, (4) fraud, (5) a violation of the FDCPA, (6) a violation of the "Consumer Protection Act," (7) tortious interference, (8) slander of title, (9) deprivation of property without due process, (10) "monetary loss," and (11) civil conspiracy. The trial court explained specifically why all eleven putative claims should be dismissed. The trial court also found

that Woodward's claims against the Association and Schlosser were barred by R.C. 5311.18(B)(6). The court additionally found that all claims against the Association's "legal counsel" were dismissed "as no allegation has been raised the attorneys were not acting in good faith on behalf of their clients," and found that "a law firm may not be held vicariously liable for legal malpractice when none of its principals or associations are liable for legal malpractice." Finally, the trial court determined that "Insomuch as this Court has not addressed a cause of action alleged by Woodward, such cause of action is dismissed for falling short of Ohio's notice pleadings requirements and lacking specificity." The trial court dismissed Woodward's counterclaims in full as well as Woodward's "third-party complaint." The court certified its judgment entry with Civ.R. 54(B) language and Woodward has appealed, raising one assignment of error:[2]

{¶13} THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO DISMISS PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS.

{¶14} Woodward argues that the trial court erred in granting judgment on the pleadings, principally arguing that the parties placed an "invalid lien" on his property by failing to adhere to the "established rules" for liens at the Association. Woodward further argues that the Association violated its payment agreement with him by imposing "spurious, unexplained, unjustified charges" under the agreement. Woodward makes little or no argument with regard to the trial court's dismissal of many of his claims, as discussed below.

## A. Civ.R. 12(C) and Standard of Review

{¶15} "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Civ.R.12(C). Civ.R. 12(C) motions

---

2. Upon consideration, we find competent and credible evidence to support the common pleas court's finding of "no just reason for delay" under Civ.R. 54(B). *See Wisintainer v. Elcen Power Strut Co.*, 67 Ohio St.3d 352 (1993).

are for resolving questions of law, and the determination made is based solely on the allegations in the pleadings. *Peterson v. Teodosio*, 34 Ohio St.2d 161, 166 (1973). Unlike motions under Civ.R. 12(B)(6), motions under Civ.R. 12(C) allow all pleadings to be considered. *Keegan v. Sneed*, 12th Dist. Butler No. CA2000-02-029, 2000 WL 1530879, *2 (Oct. 16, 2000). Any writings attached to the pleadings may also be considered. *Golden v. Milford Exempted Village School Bd. of Edn.*, 12th Dist. Clermont No. CA2008-10-097, 2009-Ohio-3418, ¶ 6.

{¶16} "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the [non-moving party] could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). A Civ.R. 12(C) motion "requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law." *Id.*

{¶17} "[W]hile the factual allegations of a complaint must be taken as true, unsupported legal conclusions are insufficient to withstand a Civ.R. 12(C) motion." *Georgantonis v. Reading*, 1st Dist. Hamilton No. C-190615, 2020-Ohio-3961, ¶ 22, citing *Johnson-Newberry v. Cuyahoga Cty. Child & Family Servs.*, 8th Dist. Cuyahoga No. 107424, 2019-Ohio-3655, ¶ 14; *Maternal Grandmother v. Hamilton Cty. Job & Family Servs.*, 1st Dist. Hamilton No. C-180662, 2020-Ohio-1580, ¶ 21. *See BAC Home Loans Servicing, L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 37 (12th Dist.) (holding the same in the context of analyzing a dismissal premised on Civ.R. 12[B][6]).

{¶18} Ohio is a notice-pleading state and therefore a party is not required to plead operative facts with particularity. *Golden*, 2009-Ohio-3418 at ¶ 23, citing *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, ¶ 29. Under Civ.R. 8(A), a

complaint need only contain a short and plain statement of the claim showing that the party is entitled to relief. *Id.* A party is not required to prove his or her case at the pleading stage and need only give reasonable notice of the claim. *Id.*, citing *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991) and *Ogle v. Ohio Power Co.*, 180 Ohio App.3d 44, 2008-Ohio-3418, ¶ 5 (4th Dist.). The simplified notice-pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and to dispose of nonmeritorious claims. *Id.*

{¶19} An appellate court reviews the trial court's decision on a Civ.R. 12(C) motion de novo and considers all legal issues without deference to the trial court's decision. *Union Twp., Clermont Cty. v. Union Twp. Professional Firefighters' Local 3412*, 142 Ohio App.3d 542, 547 (12th Dist.2001).

{¶20} Before proceeding with our analysis, we note that although Woodward is proceeding pro se, a pro se appellant is held to the same obligations and standards set forth in the appellate rules that apply to all litigants. *Bowles v. Singh*, 12th Dist. Clermont No. CA99-10-094, 2000 WL 1051847, *2 (July 31, 2000).

### B. A Note About Organization

{¶21} The assignment of error requires us to examine whether the trial court correctly dismissed eleven or more claims asserted by Woodward against numerous distinct entities and individuals. The discussion of so many claims with respect to so many parties runs the risk of being very complicated. The risk of complication is heightened here, where Woodward abandoned some claims by not referring to them at all in his appellate briefing, abandoned others by referring to them only in passing or only in his reply brief, and discussed others in a confusing manner. The risk of confusion is also heightened by the at times hard to follow discussion of the claims and parties in the documents filed in the court below. We recognize that the Association's claims against Woodward are not part of this

appeal and remain to be litigated. We want to end the confusion and bring some clarity to this case. Particularly here, where Woodward is pro se, we want the parties to understand our reasoning with respect to each dismissed claim as clearly as possible.

{¶22} Some of the conclusions we reach in this opinion apply to multiple claims. But we believe that the best way to provide clarity and reduce the confusion in this case is to discuss each claim individually. Discussing each claim individually will necessarily require some repetition in our opinion – as, for example, we will have to repeatedly refer to the effect of Woodward's having abandoned claims – but we believe that in this case it is better to be clear and repetitive than to be succinct but unclear. We will discuss Woodward's claims in the order they were analyzed by the trial court, to the extent possible. Because our analysis for the most part is the same with respect to each claim whether that claim is considered with respect to the Association or one of the counterclaim defendants, we will only discuss the Association and one or more of the counterclaim defendants individually where necessary.

### C. Analysis of Claims

### 1. Wrongful Foreclosure

{¶23} On appeal, Woodward presented no arguments regarding the trial court's dismissal of his "wrongful foreclosure" claim other than one brief, cryptic admission that the claim "may not be a cause of action in Ohio." Woodward's failure to argue that the trial court erred with respect to his "wrongful foreclosure" claim is significant. App.R. 16(A)(7) requires an appellant's brief to contain "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 12(A)(2) further provides that an appeals court "may disregard an assignment of error presented for review if the party raising it fails to identify

in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App. R. 16(A)."

{¶24} Because Woodward has abandoned his wrongful foreclosure claim by making no argument regarding why the trial court erred in dismissing that claim, we may disregard Woodward's assignment of error to the extent it may relate to the wrongful foreclosure claim. App.R. 16(A)(7); App.R. 12(A)(2); *see State v. Watson*, 126 Ohio App.3d 316, 321 (12th Dist.1998). Therefore, Woodward's assignment of error is overruled with respect to the dismissal of his wrongful foreclosure claim.

{¶25} Even if Woodward had not abandoned his "wrongful foreclosure" claim, the trial court did not err in dismissing that claim because the trial court was correct in concluding that Ohio does not recognize a "wrongful foreclosure" cause of action. *PHH Mtge. Corp. v. Barker*, 3d Dist. Van Wert, No. 15-19-01, 2019-Ohio-5301, ¶ 28 (affirming summary judgment dismissing "wrongful foreclosure" claim because Ohio courts have not recognized an independent cause of action for wrongful foreclosure). *Accord Nationstar Mtge., L.L.C. v. Waisanen*, 9th Dist. Summit No. 14CV182370, 2017-Ohio-131, ¶ 6, fn.1 and *Third Fed. S. & L. Assn. of Cleveland v. Formanik*, 8th Dist. Cuyahoga No. 103649, 2016-Ohio-7478, ¶ 53 (describing case law regarding the non-existence of "wrongful foreclosure" as a claim under Ohio law).

## 2. Abuse of Power

{¶26} Woodward presented no argument in his appellate briefs regarding the trial court's dismissal of his "abuse of power" claim. Therefore, he has abandoned or waived that claim and we need not consider it. App.R. 12(A)(2); App.R. 16(A)(7); *Watson*, 126 Ohio App. 3d at 321. Woodward's assignment of error is overruled with respect to the dismissal of his abuse of power claim.

{¶27} Even if Woodward had not abandoned his "abuse of power" claim, the trial

court did not err in dismissing that claim because the trial court was correct in noting that Ohio does not recognize such a cause of action. *Peters v. Ohio Dept. of Natural Resources*, 10th Dist. Franklin No. 03AP-350, 2003-Ohio-5895, ¶ 15 ("no Ohio Court has ever recognized the existence of the tort of 'abuse of power.'").

### 3. Breach of Duty of Good Faith and Fair Dealing

{¶28} On appeal, Woodward only made one passing reference to his claim of breach of the duty of good faith and fair dealing, in the form of a mere citation to a federal district court case stating that "the duty of good faith and fair dealing is integral to any contract." *Ogle v. BAC Home Loans Servicing LP*, 924 F.Supp.2d 902, 914 (S.D. Ohio 2013), citing *Krukrubo v. Fifth Third Bank*, 10th Dist. Franklin No. 07AP-270, 2007-Ohio-7007, ¶ 18. Woodward offered no explanation as to the relevance of this case. Nor did he offer any other legal argument regarding why the trial court erred in dismissing his claim for breach of the duty of good faith and fair dealing. Based on Woodward's failure to develop any cognizable legal argument concerning his claim for breach of the duty of good faith and fair dealing, we find that Woodward has abandoned the claim. *See Watson*, 126 Ohio App.3d at 321-22 (overruling assignment of error because although appellant cited case law to support his res judicata argument, appellant "fail[ed] to apply the case law to the facts of this case, and instead uses only conclusory statements to support his assignment of error"); *see also* App.R. 12(A)(2); App.R. 16(A)(7). Woodward's assignment of error is overruled with respect to the dismissal of his claim for breach of the duty of good faith and fair dealing.

{¶29} Even if Woodward had not abandoned his claim for breach of the duty of good faith and fair dealing, the trial court correctly concluded that there is no claim for breach of the duty of good faith and fair dealing outside the insurance context under Ohio law. "Rather, the action arises from the duty of good faith and fair dealing inherent in every

contract and cannot stand alone from the contract claim." *Walton v. Residential Fin. Corp.*, 151 Ohio Misc.2d 28, 2009-Ohio-1872, ¶ 10 (C.P.)*. Accord Lakota Loc. School Dist. Bd. of Edn. v. Brickner*, 108 Ohio App. 3d 637, 646 (6th Dist.1996).

### 4. Fraud

{¶30} On appeal, Woodward made no argument regarding the trial court's dismissal of his fraud claim. Therefore, he has abandoned that claim and we overrule his assignment of error with respect to that claim. App.R. 12(A)(2); App.R. 16(A)(7); *Watson*, 126 Ohio App.3d at 321.

{¶31} Even if Woodward had not abandoned his fraud claim, the trial court correctly concluded that Woodward failed to plead a fraud claim. The trial court dismissed Woodward's fraud claim "for lack of specificity," and cited *Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 161 Fed. Appx. 487, 491 (6th Cir. 2005), which it described as "holding *pro se* litigants are not relieved of the duty to develop claims with an appropriate degree of specificity."

{¶32} The elements of fraud are:

> a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to its truth or falsity that knowledge may be inferred, (4) with the intent of misleading another to rely on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.

*Shannon v. Fischer*, 12th Dist. Clermont No. CA2020-05-022, 2020-Ohio-5567, ¶ 15, citing *Russ v. TRW, Inc.*, 59 Ohio St. 3d 42, 49 (1991). Civ.R. 9(B) requires that when fraud is pleaded, "the circumstances constituting fraud * * * shall be stated with particularity." "These circumstances normally include the time, place, and content of the false representation, the fact misrepresented, and what was obtained or given as a consequence

of the fraud." *Turner v. Salvagnini America, Inc.*, 12th Dist. Butler No. CA2007-09-233, 2008-Ohio-3596, ¶ 26.

{¶33} Woodward's allegations regarding fraud in his Counterclaim did not meet these standards. Woodward alleged that "[the Association] and Third-Party Defendants committed fraud in the taking of property, and by levying excessive fees and using spurious, unjustified, unexplained charges." (Answer/Counterclaim p. 13, ¶ 8). Not only do these allegations lack the detail required to plead fraud, but Woodward also failed to make any allegations whatsoever regarding a *representation or concealment*, let alone "the time, place, and content of the false representation, the fact misrepresented, and what was obtained or given as a consequence of the fraud." *Turner* at ¶ 26. Instead, Woodward based his fraud allegations on the acts of taking property, levying fees, and imposing charges. While Woodward may contend that these acts were wrongful, mere allegations regarding wrongful acts, without an allegation regarding a false representation or concealment satisfying the elements of a fraud claim, cannot be the basis for a fraud claim. *See Russ*, 59 Ohio St. 3d at 49. The trial court did not err in dismissing Woodward's fraud claim.

### 5. Fair Debt Collection Practices Act

{¶34} On appeal, Woodward presented no substantive argument regarding his FDCPA claim but merely stated that an "invalid lien" is a violation of the FDCPA and that the Lawyer Defendants are debt collectors. However, unsupported legal conclusions do not demonstrate that a trial court erred in dismissing a claim. *See Watson*, 126 Ohio App. 3d at 321. Therefore, Woodward has abandoned his FDCPA claim, and we overrule his assignment of error with respect to that claim. App.R. 12(A)(2); App.R. 16(A)(7); *Watson*, 126 Ohio App. 3d at 321.

### 6. Ohio Consumer Sales Practices Act

{¶35} On appeal, Woodward ignored his OCSPA claim in his primary brief. Woodward only briefly referred to the OCSPA claim in one of his two reply briefs. However, rather than making any argument, Woodward merely mentioned the claim and included a large block quote of text from an Ohio Supreme Court case, *Taylor v. First Resolution Invest. Corp.*, 148 Ohio St.3d 627, 2016-Ohio-3444. Woodward did not explain the significance of the quoted text. Even if we could determine why Woodward relies on *Taylor*, in these circumstances Woodward has abandoned his OCSPA claim and we overrule his assignment of error with respect to that claim. App.R. 12(A)(2); App.R. 16(A)(7); *Watson*, 126 Ohio App. 3d at 321.

{¶36} Even if Woodward had not abandoned his OCSPA claim, the trial court did not err when it dismissed Woodward's OCSPA claim. Woodward merely pleaded that the Association and third-party defendants violated the "Consumer Protection Act." He failed to plead that any particular party was a supplier, failed to describe any particular activity as a consumer transaction, and failed to plead what acts by the alleged suppliers constituted unfair, deceptive, or unconscionable practices under R.C. 1345.02(A) and 1345.03(A).

### 7. Tortious Interference

{¶37} On appeal, Woodward ignored his tortious interference claim in his primary brief. Woodward only referenced that claim once in one of his reply briefs, but without argument. In these circumstances Woodward has abandoned this claim. *See Watson*, 126 Ohio App. 3d at 321. Therefore, we overrule his assignment of error with respect to his tortious interference claim. App.R. 12(A)(2); App.R. 16(A)(7); *Watson*, 126 Ohio App. 3d at 321.

### 8. Slander of Title

{¶38} On appeal, Woodward only once referred to his slander of title claim, merely stating that Schlosser, Fay, and Attorney Ferguson engaged in "multiple episodes of

Slander of Title." But Woodward failed to submit any argument or factual basis supporting this statement. As previously explained, unsupported legal conclusions do not demonstrate that a trial court erred in dismissing a claim. *See Watson*, 126 Ohio App. 3d at 321. Therefore, Woodward has abandoned his slander of title claim and we overrule his assignment of error with respect to that claim. App.R. 12(A)(2); App.R. 16(A)(7); *Watson*, 126 Ohio App. 3d at 321.

{¶39} Even if Woodward had not abandoned his slander of title claim, the trial court was correct that the claim was untimely filed. The statute of limitations for slander of title is one year. R.C. 2305.11(A); *Metzler v. Fifth Third Bank*, 10th Dist. Franklin No. 16AP-638, 2017-Ohio-7088, ¶ 13. "It is well-established that slander of title occurs at the time the offending document is filed with the recorder." *Smith Elec. v. Rehs*, 9th Dist. Summit No. 18433, 1998 WL 103334, *2 (Feb. 18, 1998). Because Woodward alleges that the third-party defendants engaged in slander of title by levying "spurious, unjustified, and unexplained charges" against him, and the lien at issue was recorded on August 25, 2017, the statute of limitations bars his slander of title claim. *See id.* The trial court did not err in dismissing Woodward's slander of title claim.

## 9. Due Process

{¶40} The Answer/Counterclaim refers to Woodward's due process claim in a perfunctory manner, without elaboration: "[Woodward] alleges that [the Association] and Third-Party Defendants deprived [Woodward] of property without due process." In its Decision and Entry, the trial court interpreted this as a due process claim brought under the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution. On appeal, Woodward did not refer to his due process claim at all, let alone dispute the trial court's characterization, in his primary brief. In one of his reply briefs, Woodward argued that "Government is not required for a claim of procedural due process" because amendments to Ohio's

condominium statute introduced "due process" requirements regarding the imposition of charges for damages or enforcement of assessments. (Reply Brief to the Association at 7, citing R.C. 5311.081[B][12]). He cited a Tenth District case stating, "A condominium association must accord a unit owner procedural due process, which requires, in pertinent part, notice of rules and regulations." *Tallis v. Woodrun Place Unit Owners' Assn.*, 10th Dist. Franklin No. 05AP-969, 2006-Ohio-3267. Woodward made a similar argument before the trial court in his memorandum opposing the motion for judgment on the pleadings filed by the Association, Schlosser, Stonegate, and Fay.

{¶41} We need not decide whether Woodward's due process claim was brought as a constitutional claim or as a statutory due process claim because either way the claim should have been dismissed. First, the trial court was correct in concluding that due process claims under the Fifth, Eighth, and Fourteenth Amendments apply to the conduct of the state, not the conduct of a private condominium association and its employees. *See Grenga v. Bank One, N.A.*, 7th Dist. Mahoning No. 04 MA 94, 2005-Ohio-4474, ¶ 82; *Adityanjee v. Case W. Res. Univ.*, 156 Ohio App.3d 432, 2004-Ohio-1109, ¶ 51 ("Most of the protections for individual rights and liberties contained in the United States and Ohio Constitutions apply only to actions of governmental entities * * *.") Second, Woodward's argument that Ohio's condominium statute includes "due process" requirements regarding the imposition of charges for damages or enforcement of assessments does not save his due process claim from dismissal because his counterclaims cannot be construed to set forth a claim based upon alleged rights set forth under R.C. 5311.081. Instead, this simply appears to be Woodward's attempt to amend his complaint after the fact to raise a new unpleaded claim.[3]

{¶42} For these reasons the trial court did not err in dismissing Woodward's due

---

3. Woodward's Answer/Counterclaim did refer to a generic violation of his rights, under R.C. Chapter 5311, but only in the context of listing of affirmative defenses to the Association's complaint.

process claim.

### 10. Monetary Loss

{¶43} On appeal, Woodward completely ignored his "monetary loss" claim. Therefore, Woodward abandoned his purported monetary loss claim and we overrule his assignment of error with respect to that claim. App.R. 12(A)(2); App.R. 16(A)(7); *Watson*, 126 Ohio App. 3d at 321.

{¶44} Even if Woodward had not forfeited his monetary loss claim, the trial court was correct in dismissing that claim because there is no claim for "monetary loss" under Ohio law. *Monus v. Day*, 7th Dist. Mahoning No. 10 MA 35, 2011-Ohio-3170, ¶ 33 ("Principles requiring generous construction of pro se filings do not require courts to conjure up questions never squarely asked or construct full-blown claims from convoluted reasoning"). To the extent that Woodward may have intended his reference to "monetary loss" to be a reference to damages under another claim, our dismissal of Woodward's monetary loss claim as an independent claim does not impact any other claims.

### 11. Civil Conspiracy

{¶45} On appeal, Woodward presents no argument regarding his civil conspiracy claim and instead simply asserts, "it is very clear that third-party Defendants have engaged in a civil conspiracy." However, unsupported legal conclusions do not demonstrate that a trial court erred in dismissing a claim. *See Watson* 126 Ohio App.3d at 321. Therefore, Woodward has abandoned his civil conspiracy claim and we overrule his assignment of error with respect to that claim. *Watson* at 321; App.R. 12(A)(2); App.R. 16(A)(7).

{¶46} Even if Woodward had not abandoned his civil conspiracy claim, the trial court was correct to dismiss that claim because there is no underlying tort or unlawful act. A civil conspiracy claim requires an underlying tortious act, and a claim of breach of contract – the only claim that we find the trial court should not have dismissed – cannot serve as an

underlying tortious act. *Strama v. Allstate Ins. Co.*, 7th Dist. Belmont No. 14 BE 8, 2015-Ohio-2590, ¶ 37.

### 12. Breach of Contract

{¶47} The trial court in its Decision and Entry only specifically mentioned those 11 claims discussed above; it never mentioned a breach of contract claim. However, after explaining why the 11 claims discussed above should be dismissed under Civ.R. 12(C), the trial court stated that "Insomuch as this Court has not addressed a cause of action alleged by Woodward, such cause of action is dismissed for falling short of Ohio's notice pleadings requirements and lacking specificity."

{¶48} While the trial court did not mention a breach of contract claim, the Association, Schlosser, Stonegate, and Fay argued in their motion for judgment on the pleadings that Woodward pleaded breach of contract and that the claim should be dismissed by the trial court. They also acknowledged in their appellate brief that the breach of contract claim had been dismissed and argued that its dismissal should be affirmed.

{¶49} Upon review of the record, we conclude that the Association, Schlosser, Stonegate, and Fay are correct: Woodward did plead a claim for breach of contract. Moreover, we conclude that he actually pleaded *two* such claims. Woodward, without using the phrase "breach of contract," described his two claims for breach of contract in his "First Counterclaim" and "Second Counterclaim."

{¶50} In Woodward's "First Counterclaim," he alleged that Schlosser, Attorney Ferguson, and Fay "act[ed] in concert" to cause a $310.00 lien fee to be placed against Woodward's account. Woodward alleged that these actions "were in violation of the Defendant's rights under established rules, regulations, and standard operating procedures * * * violated [Woodward's] right to be dealt with fairly and in good faith * * * and denied [Woodward] the right to substantive due process." He also alleged that because of these

actions he lost $310.00.

{¶51} In the first sub-part of Woodward's "Second Counterclaim," he alleged that the Association charged him an inappropriate "document fee" under the payment agreement that he entered with the Association, and that he suffered damages totaling $1,753.00. Woodward also referred to breach of contract in the seventh sub-part of his "Second Counterclaim": "[the Association and the Third-Party Defendants" committed tortious interference and *breach of with the contract* between the Association and Residents" (sic). (Emphasis added).

{¶52} While inartful, Woodward's First Counterclaim appears premised on a breach of the Declaration. He claimed that his rights "under established rules, regulations, and standard operating procedures" were violated by the Association placing a $310 charge against his condominium owner's account and by filing the lien against the Property without first giving him some warnings he alleged he was due under the Declaration. Given the context, and considering Ohio's liberal notice pleading standard, the Association would or should have been on notice that Woodward was alleging that it breached the Declaration by imposing the "lien fee" and recording the lien. However, this breach of contract claim does not extend to any of the third-party defendants – Schlosser, Fay, Stonegate, or the Lawyer Defendants – because Woodward failed to plead that any of these individuals or entities were parties to the Declaration.

{¶53} In his Second Counterclaim, Woodward referenced the 2017 "payment agreement" entered with the Association. Woodward contended that the Association violated the terms of the payment agreement by overcharging him, or not crediting him for payments, or for refusing to accept payments when he tried to resume normal payments. He detailed monetary charges – apparently late fees – that began to accumulate as a result. He claimed a "money" loss, to be determined at trial. Again, while inartful, Woodward's

Second Counterclaim was sufficiently pleaded to reasonably place the Association on notice that Woodward was alleging a breach of contract with respect to the payment agreement. And again, this claim cannot be extended to any of the third-party defendants because Woodward did not plead that any were parties to the payment agreement.

{¶54} The Association argues that the breach of contract claims against it fails because such claims are barred under R.C. 5311.18(B)(6). That statute provides:

> In any foreclosure action, it is not a defense, set off, counterclaim, or crossclaim that the unit owners association has failed to provide the unit owner with any service, goods, work, or material, or failed in any other duty.

{¶55} Upon consideration, we conclude that R.C 5311.18(B)(6) is irrelevant to the viability of Woodward's breach of contract claims. Woodward's contractual claims against the Association are not premised on a claim that the Association failed to provide him with any "service, goods, work, or material." Woodward's breach of contract claims do not constitute claims that the Association "failed in any other duty" as that phrase is to be understood in the context of R.C. 5311.18(B)(6).

{¶56} The Association further argues that Woodward's breach claims fail because he did not attach any written contract to his pleading, and therefore failed to comply with Civ.R. 10(D)(1), which provides:

> *Account or Written Instrument.* When any claim or defense is founded on an account or other written instrument, a copy of the account or written instrument must be attached to the pleading. If the account or written instrument is not attached, the reason for the omission must be stated in the pleading.

{¶57} This argument is unavailing. The Association also did not attach a copy of the Declaration to its pleading, explaining that the reason it did not do so was because it had been recorded and was a matter of public record. Woodward's pleading need not be dismissed for failing to explain what the Association already explained in the complaint.

- 20 -

{¶58} With respect to the payment agreement, the Association is correct that Woodward did not attach a copy to his pleading. However, "the remedy for failing to comply with Civ.R. 10(D)(1) is not a dismissal.* * * Rather, the burden is on the opposing party to move for a more definite statement pursuant to Civ.R. 12(E)." *Citibank, N.A. v. Ebbing*, 12th Dist. Butler No. CA2012-12-252, 2013-Ohio-4761, ¶ 12. The Association did not move for a more definite statement. Accordingly, it has forfeited this argument as a basis for the dismissal of Woodward's counterclaims. *Ohio Receivables, L.L.C. v. Dallariva*, 10th Dist. Franklin No. 11AP-951, 2012-Ohio-3165, ¶ 36; *Sylvester Summers, Jr. Co., L.P.A. v. E. Cleveland*, 8th Dist. Cuyahoga No. 98227, 2013-Ohio-1339, ¶ 31; *Columbus v. Kahrl*, 10th Dist. Franklin No. 95APG09-1204, 1996 WL 117303 (Mar. 12, 1996).

{¶59} In sum, in construing all material allegations in the pleadings in Woodward's favor, we find that Woodward could potentially prove a set of facts in support of his breach of contract counterclaims based on alleged breaches of the Declaration and the payment agreement by the Association. We make no comment and reach no conclusions regarding the merit or lack thereof of Woodward's breach of contract claims. Those claims survive only because of Ohio's liberal pleading standard.

## IV. Conclusion

{¶60} For the foregoing reasons, we conclude that, other than the two breach of contract claims against the Association, Woodward has abandoned each and every claim asserted against the Association and the third-party defendants.[4] We therefore partially sustain the assignment of error and reverse the judgment of the common pleas court as to the dismissal of the two breach of contract claims against the Association.[5] Otherwise, the

---

4. Because of how we have resolved other issues and arguments discussed above, we need not address the Lawyer Defendants' arguments regarding qualified immunity.

5. In his appellate brief, Woodward also argues, in the context of his First Counterclaim, that the Association's

assignment of error is overruled and the trial court's dismissal of all other claims against the Association and the third-party defendants is affirmed.

{¶61} Judgment affirmed in part and reversed in part.

M. POWELL, P.J., and S. POWELL, J., concur.

---

filing of the lien violated R.C. 5311.081(C).  We need not address this argument as the issue is subsumed within the breach of contract claim, which we have concluded should not have been dismissed on separate grounds.